Tom ALEXANDER, Individually,
and Alexander & McEvily,
Petitioners,

v.

TURTUR & ASSOCIATES, INC., Mario
Turtur, Steve Turtur, and the Turtur
Family Partnership, Respondents.

No. 02–1009.

Supreme Court of Texas.

Argued on Dec. 3, 2003.

Decided Aug. 27, 2004.

Rehearing Denied Nov. 5, 2004.

Ronald D. Krist, Krist Law Firm, P.C., Houston, for amicus curiae.

Gwen J. Samora, Marie R. Yeates, Jennifer H. Davidow, Vinson & Elkins, L.L.P., Houston, for Petitioners.

Valorie W. Davenport, Davenport Legal Group, Levon G. Hovnatanian, Bruce Edwin Ramage, Kevin Graham Cain, Dale Jefferson, Martin Disiere Jefferson & Wisdom, L.L.P., Daryl L. Moore, Storey Moore & McCally, P.C., Houston, for Respondents.

Chief Justice PHILLIPS delivered the opinion of the Court.

The principal issue in this legal malpractice case is whether the jury needed expert testimony to determine whether the client would have prevailed in an underlying trial but for its attorneys' alleged negligence in preparing and trying the case. The trial court concluded that the jury needed such guidance to determine causation. There being none, the court disregarded the jury's findings on causation and rendered judgment that the client take nothing. Concluding that expert testimony was not needed because the connection between the attorneys' negligence and the client's loss was obvious, the court of appeals reversed and remanded. 86 S.W.3d 646, 662. We disagree that the causal connection was either obvious or a matter within the common understanding of lay persons. Because we conclude that there is no competent evidence to connect the client's damages to its attorneys' negligence, we reverse the court of appeals' judgment and render judgment that the client take nothing.

I

Mario Turtur and his two sons, Steve and Chris, are brokers with Turtur & Associates, Inc. ("Turtur Inc."), a securities firm. Dr. Lee McKellar owns and operates McKellar Ranch, Inc., a cattle business. In 1982, Turtur Inc. agreed with McKellar Ranch to be the exclusive marketer of two cattle-related investments: (1) donor cow interests and (2) cattle "embryo transplants." [1] Although the parties had

---

1. The purchaser of a "donor cow interest" bought a half interest in a female Red Brahman donor cow which was periodically superovulated to produce multiple eggs; the eggs were then washed from the donor cow's uterus, fertilized, and transferred to a "recipient cow." The investor in this program was entitled to half the calves produced from the donor cow. The purchaser of an "embryo" interest bought a "unit" of ten implanted embryos, paying for transplant work to the recipient cows. The investment worked as a tax

disagreements about the investment program, Turtur Inc. continued to market it through 1984.

In 1985, Turtur Inc. sued McKellar Ranch and Dr. McKellar, alleging fraud and breach of contract in state court and claiming damages of about $500,000. McKellar Ranch counterclaimed for fraud, misrepresentation, and breach of fiduciary duty. McKellar Ranch thereafter sought bankruptcy protection in the United States Bankruptcy Court for the Eastern District of Texas, staying the state court proceeding. Turtur Inc.'s claims against McKellar Ranch were severed and made a part of an adversary proceeding in the bankruptcy court.[2] The claims against Dr. McKellar remained in state court.

Joe Reynolds, a Houston attorney, and John Hardy, a Tyler bankruptcy attorney, initially represented Turtur Inc. in the bankruptcy court. After obtaining a continuance, Reynolds withdrew as counsel, compelling Turtur Inc. to look for a new lead trial attorney. About two months before the rescheduled adversary proceeding was to begin trial in Tyler, Turtur Inc. hired the Houston law firm of Alexander & McEvily to represent it, paying a retainer of $10,000 with the understanding that name partner Tom Alexander would be lead counsel. Judy Mingledorff, a new associate at the firm, was assigned to help prepare the case. Hardy continued to serve as local counsel.

On June 15, 1987, two days before the adversary proceeding was to begin, Alexander appeared for a docket call in Harris County state district court and announced ready for trial. The district judge set this case to begin trial the next day. On June 17, Mingledorff filed a motion for continuance in the bankruptcy court based on Alexander's assignment for trial in state court. McKellar Ranch opposed the motion, and the judge denied the continuance. The case proceeded to trial with Mingledorff and Hardy representing Turtur Inc.

By order, the court limited the trial of the adversary proceeding to two days. Despite the short trial, the court considered the matter for over two years before rendering its decision on July 20, 1989. By this time, Alexander no longer represented Turtur Inc., primarily because of a dispute over whether Alexander was entitled to keep the $10,000 retainer since he had been unable to try the adversary proceeding himself.

In its judgment, the bankruptcy court concluded that both Turtur Inc. and McKellar Ranch had breached certain parts of their agreements and that Turtur Inc. had committed fraud as well. McKellar Ranch predominantly prevailed and was awarded net damages of $105,718.80. In a subsequent settlement, Turtur Inc. paid McKellar $37,500 and dropped its state court claim against Dr. McKellar individually to set this judgment aside.

Three months later, Turtur Inc. brought this suit against Alexander and his firm for malpractice, claiming that their negligence proximately caused its loss in the bankruptcy court trial. Turtur Inc. also alleged breach of fiduciary duty and breach of contract and asserted that it was entitled

shelter because the investor could immediately claim a deduction for these transplant expenses.

**2.** Turtur Inc. filed a proof of claim in the bankruptcy case for $479,631.20, the amount sought in the state court action, against McKellar Ranch. McKellar Ranch filed an objection to the allowance of Turtur Inc.'s claim and asserted counterclaims tracking those asserted by McKellar Ranch in state court. At that point the dispute between Turtur Inc. and McKellar Ranch became an adversary proceeding in the McKellar Ranch bankruptcy case.

to damages of not less than $500,000 and to recoup $45,000 in attorneys' fees paid to the defendants. Thereafter, Turtur Inc. amended its pleadings to claim violations of several provisions of the Deceptive Trade Practices Act. *See* Tex. Bus. & Comm.Code § § 17.41–.63. The amended pleadings also added Mario, Chris, and Steve Turtur as plaintiffs but did not otherwise identify any claim distinct from those asserted by Turtur Inc. The trial court granted special exceptions to the amended petition and ordered the plaintiff to replead "to drop [the Turturs], Individually, from this lawsuit," and "to specify the maximum amount of damages being claimed in this lawsuit."

In response to these special exceptions, Turtur Inc. filed its Second Amended Petition alleging that the defendants' negligence and statutory violations caused it $650,000 in damages. Plaintiffs' Second Amended Petition also dropped Chris Turtur as a plaintiff, but left Mario and Steve Turtur as plaintiffs, asserting for the first time a claim specific to them. The amended pleading identified Mario and Steve Turtur as "successors in interest, d/b/a The Turtur Family Partnership with respect to their interests in donor cow interests and certain cattle in the possession of McKellar Ranch, Inc. in the summer of 1987." The Turturs alleged that Alexander and his firm had cost the partnership $3.9 million in lost profits by negligently authorizing the sale of these cattle in 1987. Concluding that the partnership's claim was barred by limitations, the trial court granted defendants' motion for partial summary judgment, leaving only Turtur Inc.'s legal malpractice and DTPA claims for trial.

At trial, the jury found in favor of Turtur Inc. on both theories, awarding over $3 million in damages. The trial court denied Turtur Inc.'s motion to amend its petition to conform to the award, but it granted Alexander and his firm's motion for judgment notwithstanding the verdict on the grounds that plaintiff had presented no evidence of causation or damages. Turtur Inc., along with Mario and Steve Turtur, appealed the trial court's take-nothing judgment.

The court of appeals affirmed the summary judgment against the Turturs on the partnership claim, but it reversed the take-nothing judgment for Alexander and his firm on the legal malpractice and DTPA claims, remanding to the trial court with instructions to conform the jury award of damages to Turtur Inc.'s pleadings. 86 S.W.3d at 662. Both Alexander and his firm and the Turturs petitioned this Court for review.

## II

To prevail on a legal malpractice claim, a plaintiff must show "that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Peeler v. Hughes & Luce,* 909 S.W.2d 494, 496 (Tex.1995). When the plaintiff's allegation is that some failure on the attorney's part caused an adverse result in prior litigation, the plaintiff must produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged. *Haynes & Boone v. Bowser Bouldin, Ltd.,* 896 S.W.2d 179, 181 (Tex.1995). To prevail on a claim under the DTPA, a plaintiff must prove that a violation of the statute was a producing cause of the injury. Tex. Bus. & Comm.Code § 17.50(a). While different, both producing cause and proximate cause require proof of causation in fact. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). In this Court, Alexander and his firm contest only

the jury's findings of causation and damages.

The court of appeals held that the evidence of causation was legally sufficient, parsing through these facts to establish that, but for the negligence of Alexander and his firm, the result in the adversary proceeding would have been more favorable to Turtur Inc.:

- Alexander, an experienced civil trial lawyer, agreed to personally try and oversee the preparation of the Turturs' case but did not follow through with his agreement.
- Mingledorff, a new associate and former assistant district attorney with no civil trial or bankruptcy court experience, instead acted as lead trial attorney.
- At the adversary proceeding, Mingledorf called only two witnesses, Mario and Chris Turtur. Mingledorff did not adequately prepare Mario for his testimony. She did not call Steve Turtur, although he was available and was the Turtur most knowledgeable about the dealings with McKellar.
- Mingledorff's direct examination of Mario Turtur covers only 16 pages in the reporter's record whereas his testimony at the malpractice trial runs 1318 pages. Steve Turtur's testimony at the malpractice trial covers 505 pages.
- Mingledorff did not review some documents produced by McKellar prior to trial, which the Turturs' expert testified was negligence. The expert also testified that Alexander was negligent in turning over a complex bankruptcy matter in a civil case to Mingledorff, who had been prosecuting criminal cases for the past several years.
- Mingledorff did not depose or call as witnesses at the adversary proceeding at least 10 other witnesses who could have given relevant, favorable testimony for

the Turturs. The Turturs' expert agreed that this was negligence to the extent that these witnesses had relevant information that may have been critical to proving the Turturs' claims.

- Mingledorff did not know how to cross-examine a deposition and as a result may have failed to read into evidence relevant testimony from a deposition.
- Mingledorff was not prepared to try the adversary proceeding because she never expected to try the case.

86 S.W.3d at 654–59. Based on this evidence, the court of appeals remanded the case for the trial court to render judgment for Turtur Inc. *Id.* at 662 & n. 11. The court subsequently overruled Alexander and his firm's motion for rehearing en banc, with two justices dissenting. *Id.* at 662 (Taft & Radack, JJ. dissenting).

Alexander and his firm argue here that the facts recited by the court of appeals are not evidence that they caused Turtur Inc. to lose in the adversary proceeding. They note that the jury was asked to decide a complicated and very subjective causation issue: whether, in reasonable probability, a bankruptcy judge would have decided the underlying adversary proceeding differently if Alexander had personally tried the case or if he or Mingledorff had introduced other evidence. To understand whether any of the omitted evidence would have made a difference, Alexander and his firm submit, the jury required some guidance about how the omitted evidence was different from, and more compelling than, the evidence and testimony presented at the adversary proceeding. Moreover, since the bankruptcy judge allotted only two days for trial, both sides had to make difficult choices about what evidence to offer; lay jurors might not appreciate the legal considerations in making these selections. Given these cir-

cumstances, Alexander and his firm assert that the jury was not competent to decide, without resort to expert testimony, whether the result of the underlying adversary proceeding would have been different but for the alleged malpractice.

Turtur Inc. responds that the jury did not need any expert help because causation was obvious. While the underlying commercial case was complex, that was precisely why Turtur Inc. hired Alexander. Instead of an experienced and successful litigator, it ended up with a new associate with no civil litigation experience who, through a lack of supervision and her own inexperience, made a series of mistakes in the preparation and trial of its case. Turtur Inc. concludes that the sheer number of errors made by counsel in the preparation and trial of the underlying adversary proceeding make causation obvious here.

 Breach of the standard of care and causation are separate inquiries, however, and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other. Thus, even when negligence is admitted, causation is not presumed. *Haynes & Boone*, 896 S.W.2d at 181–82. Moreover, the trier of fact must have some basis for understanding the causal link between the attorney's negligence and the client's harm. *Id.*, 896 S.W.2d at 181; *see also* 5 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 33.16 at 116 (5th ed.2000). In some cases the client's testimony may provide this link, but in others the connection may be beyond the jury's common understanding and require expert testimony. *See* Tex.R. Evid. 702 (Testimony by Experts). As one authority observes:

> A failure of proof can result if expert testimony is limited to whether the defendant violated the standard of care. Proof of causation of injury often requires expert testimony concerning what

the attorney should have done under the circumstances. The expert testimony must be tied to the specific conduct that is in issue.

5 Mallen & Smith § 33.17 at 138–39.

The court of appeals cited two cases, *Delp v. Douglas,* 948 S.W.2d 483, 495 (Tex. App.-Fort Worth 1997), *rev'd on other grounds,* 987 S.W.2d 879 (Tex.1999), and *Streber v. Hunter,* 221 F.3d 701, 726 (5th Cir.2000), as examples of malpractice actions that did not require expert testimony on causation. 86 S.W.3d at 652. Neither case, however, involved trial malpractice. In both cases the clients themselves were the key decisionmakers, relying upon their attorney's advice with unfortunate consequences. Under these circumstances, the courts in *Delp* and *Streber* found sufficient the clients' testimony that, because of their lawyers' bad advice, they made the decisions and took the actions that resulted in their injuries. *See Delp,* 948 S.W.2d at 495–96; *Streber,* 221 F.3d at 726–27. In contrast, the decisionmaker here was the bankruptcy judge, who quite properly was not asked to, and did not, testify as to how he might have ruled if the case had been presented differently. Without expert testimony, the jury had no direct evidence explaining the legal significance of the omitted evidence.

 Legal malpractice may include an attorney's failure to exercise ordinary care in preparing, managing, and presenting litigation. *See Zidell v. Bird,* 692 S.W.2d 550, 553 (Tex.App.-Austin 1985, no writ). But "[d]ecisions of which witnesses to call, what testimony to obtain or when to cross-examine almost invariably are matters of judgment." 4 Mallen & Smith § 30.39 at 561. As such, the wisdom and consequences of these kinds of tactical choices made during litigation are generally matters beyond the ken of most jurors. And when the causal link is beyond the

jury's common understanding, expert testimony is necessary. *See Arce v. Burrow*, 958 S.W.2d 239, 252 (Tex.App.-Houston [14th Dist.] 1997), *aff'd in part, rev'd in part on other grounds*, 997 S.W.2d 229 (Tex.1999); *Delp*, 948 S.W.2d at 495; *see also Kranis v. Scott*, 178 F.Supp.2d 330, 334 (E.D.N.Y.2002) (expert testimony on causation required unless connection within factfinder's ordinary experience); *Samuel v. Hepworth, Nungester & Lezamiz, Inc.*, 134 Idaho 84, 996 P.2d 303, 308 (2000) (expert testimony on proximate cause is required when the issue is not one that lay persons are competent to make); *Dean v. Tucker*, 205 Mich.App. 547, 517 N.W.2d 835, 837 (1994) (expert witness usually required to establish causation); *Sommers v. McKinney*, 287 N.J.Super. 1, 670 A.2d 99, 104 (1996) (expert testimony usually required when adequacy of an investigation or soundness of an opinion at issue); *Sanders v. Smith*, 83 N.M. 706, 496 P.2d 1102, 1105 (1972) (expert needed when inquiry involves "complexities of trial practice"); *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo.1995) (expert testimony on proximate cause is required when the issue is not one that lay persons are competent to make); *but see Whitley v. Chamouris*, 265 Va. 9, 574 S.E.2d 251, 252–53 (2003) (expert testimony not needed when malpractice action involves "case within a case").

In another case involving allegations of trial malpractice and omitted evidence, the Oregon Supreme Court observed:

> Since plaintiff, to prevail in this [malpractice] case, had to convince the trier of fact [in the malpractice suit] ... that the result in the earlier trial would have been favorable to her had [her lawyer] introduced the two documents in question, we know of no other way in which the jury could have been guided in determining the [causation] issue than the presentation of opinion by properly qualified experts.

*Shields v. Campbell*, 277 Or. 71, 559 P.2d 1275, 1280 (1977). And the Supreme Court of Maine has stated that without competent expert testimony in a trial malpractice case demonstrating that the result of the underlying proceeding would have been different but for the alleged negligence, "the factfinder would be compelled to speculate as to proximate causation." *Corey v. Norman, Hanson & DeTroy*, 742 A.2d 933, 940 (Me.1999). Likewise, we conclude on this record that the errors allegedly made by Mingledorff in the preparation and trial of the admittedly complex, yet truncated, underlying proceeding were not so obviously tied to the adverse result as to obviate the need for expert testimony. We therefore conclude that the court of appeals erred in holding that the jury was competent to determine causation in either negligence or violation of the DTPA without expert guidance in this case.

### III

Turtur Inc. argues, in the alternative, that it submitted expert testimony on causation through Steve Peterson, an attorney who testified on the standard of care and gave his opinion about the negligence of Alexander and Mingledorff. Peterson testified that Alexander was negligent in failing to participate in the case and supervise Mingledorff and that he and his firm were negligent in turning the complex bankruptcy proceeding over to Mingledorff. Peterson also testified that Alexander should have advised the Turturs and Mingledorff as soon as he knew that he had conflicting trial settings and that Mingledorff would likely have to try the case. Peterson testified that Mingledorff was negligent in failing to review certain documents produced by McKellar before the start of trial, was negligent in failing to object to hearsay during trial, and was

negligent in preparing the pretrial order and in listing only those witnesses listed by McKellar. Peterson further testified that if other witnesses had relevant information critical to proving Turtur Inc.'s claim, they should have been listed and called. Near the end of his testimony on direct, Peterson was asked if he could comment "as to whether or not the failure to present this evidence caused Judge Abel [the bankruptcy judge] to make his findings?"

The court of appeals quoted this part of Peterson's answer in its opinion:

> I can comment that, in my opinion, the evidence that was offered and admitted at trial caused Judge Able to make the decision that he made.

86 S.W.3d at 659. The court of appeals did not explain what it believed the significance of this testimony to be. All we glean from it is that Peterson believed the bankruptcy judge decided the case on the evidence before him, praiseworthy in a judge but hardly probative on the issue of attorney malpractice. Moreover, the court of appeals failed to quote a second sentence in which Peterson disclaimed knowledge of any other evidence that might have changed the judge's decision. Peterson's full response to the question was:

> I can comment that, in my opinion, the evidence that was offered and admitted at trial caused Judge Able to make the decision that he made. *I can't tell you what other evidence might have been out there that might have resulted in a different decision.*

(emphasis added). Clearly, Peterson's testimony does not support the inference that, had omitted evidence been presented, there would have been a different result in the underlying trial.

## IV

 In their own petition, the Turturs contend that the court of appeals erred in affirming the summary judgment barring the Turtur Family Partnership's claim against Alexander and his firm. They assert that Alexander wrongfully induced their partnership to sell 34 head of genetically enhanced cattle at "fire-sale prices" by representing that any losses from the sale would be resolved in the state court action pending against Dr. McKellar. The sale was authorized on October 5, 1987, and the partnership's claim was added in Plaintiffs' Second Amended Petition filed on August 16, 1991. The trial court granted summary judgment on limitations, and the court of appeals affirmed, but the Turturs argue that the claim should relate back to the filing date of the original petition because that petition broadly "complained of the defendants' mishandling of the adversarial proceeding, which covered the wrongful sale of the cattle."

 An original pleading tolls the limitation period for claims asserted in subsequent, amended pleadings as long as the amended pleading does not allege a wholly new, distinct, or different transaction. *See* Tex. Civ. Prac. & Rem.Code § 16.068. Turtur Inc.'s Original Petition sought the recovery of damages caused by Alexander and his firm's negligent handling of its adversary proceeding in the bankruptcy court, styled *McKellar Ranch, Inc. v. Turtur & Associates, Inc.* The first mention of the partnership's claim, these cattle or the adversary proceeding involving them appears in the Second Amended Petition, which valued the partnership's loss at approximately eight times that of the malpractice claim asserted by Turtur Inc. in the Original Petition. Ordinarily, an amended pleading adding a new party does not relate back to the original pleading. *See Koch Oil Co. v. Wilber,* 895

S.W.2d 854, 863 (Tex.App.-Beaumont 1995, writ denied); *Davis v. Outdoor Equip. Co.,* 551 S.W.2d 72, 73 (Tex.Civ.App.-Houston [1st Dist.] 1977, no writ). Moreover, when the amended petition sets up a distinct and different claim from that asserted in the previous petitions, the new claim does not relate back. *See Dearing v. Lawrence,* 156 S.W.2d 1019, 1020–21 (Tex.Civ.App.-Texarkana 1941, writ ref'd). We therefore agree with the court of appeals that Turtur Inc.'s claim against Alexander and his firm for mishandling its adversary proceeding in bankruptcy court alleges a transaction which is distinct and different from the Turtur Family Partnership's subsequent complaint in the Second Amended Petition that Alexander negligently induced it to sell its cattle at "fire sale prices."

The Turturs on behalf of the partnership also argue that the court of appeals erred in affirming the summary judgment because the four-year statute of limitations applicable to fraud claims should have been applied. The Turturs, however, did not make this argument in the court of appeals. Accordingly, it has been waived. *See Fort Bend County Drainage Dist. v. Sbrusch,* 818 S.W.2d 392, 395 (Tex.1991); *Gray–Taylor, Inc. v. Tennessee,* 587 S.W.2d 668, 671 (Tex.1979).

\* \* \* \* \* \*

We affirm that part of the court of appeals' judgment upholding the summary judgment against the Turturs on their partnership's claim. We reverse that part of the court's judgment remanding the malpractice claim for rendition of judgment and render judgment that Turtur Inc. take nothing against Alexander and his firm.

Justice HECHT filed a concurring opinion in which Justice WAINWRIGHT joined.

Justice OWEN and Justice SCHNEIDER did not participate in the decision.

Justice HECHT, joined by Justice WAINWRIGHT, concurring.

I agree with the Court that without expert testimony, which it did not have, the jury in this legal malpractice case could not possibly have made a reasoned determination that U.S. Bankruptcy Judge Houston Abel would have decided fact issues in a 1987 adversary proceeding differently if only Tom Alexander had represented the creditor instead of Judy Mingledorff, or if Mingledorff had presented different evidence. But I also doubt whether a jury could ever be fairly expected to determine, even *with* expert testimony, what a judge would have decided in such hypothetical circumstances, and if a jury is to be assigned that responsibility, I worry what the testimony would be. The only person who might actually know what a trial judge would have done if a case had been presented differently is the judge himself, if his memory would serve, but he probably cannot testify voluntarily[1] and should not be compelled.[2] So testimony would need to come from lawyers or maybe former judges who would explain why one thing or another would have influenced the judge's decision—notably something the plaintiffs' expert in the present case was unwilling to do. Even assisted by such evidence, the jury

---

**1.** See *Joachim v. Chambers,* 815 S.W.2d 234 (Tex.1991).

**2.** See *United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (suggesting that a judge cannot be compelled to testify about his mental impressions of a case).

in the malpractice case would still have to decide what the trial judge would have decided without ever hearing the case he heard or the case the plaintiff says he should have heard.

Petitioners's brief states that "[i]f this Court were inclined to hold that no expert testimony on causation is required in a trial malpractice case like this ... then this Court should hold that the issue of causation in such cases more properly presents a law question for the court to decide." Petitioners cite one case in support of this conditional contention,[3] and one against.[4] They draw an analogy to criminal cases, arguing briefly that just as the issue of whether a criminal defendant was denied effective assistance of counsel is one for the court to decide,[5] so is the issue of whether the outcome of a civil case was probably affected by the trial lawyer's negligence in presenting it. While this argument has some appeal, we have not been told whether it has been made elsewhere or with what success. Absent a more thorough presentation of the legal malpractice caselaw in other jurisdictions, the issue whether causation in a case like the present one should be determined by the judge rather than a jury should be left for another day.

The Court decides only that the jury in this case could not determine causation without expert testimony; the Court does not decide that if such evidence had been adduced, the issue was properly one for the jury. With this understanding, I join the Court's opinion.

---

3. *Harline v. Barker*, 912 P.2d 433, 439–440 (Utah 1996).

4. *Chocktoot v. Smith*, 280 Or. 567, 571 P.2d 1255, 1258–1259 (1977).

5. See *Strickland v. Wash.*, 466 U.S. 668, 694–698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Childress v. Johnson*, 103 F.3d 1221, 1224 (5th Cir.1997).