In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-065 CV


____________________



CECILE CHILDS, Appellant



V.



SCOTT COHRON CRUTCHFIELD AND


CRUTCHFIELD, DECORDOVA & CHAUVEAUX, P.C., Appellees






On Appeal from the 172nd District Court


 Jefferson County, Texas


Trial Cause No. E-173,423 






MEMORANDUM OPINION


 Cecile Childs sued the attorney and law firm that defended her in litigation. The trial
court granted summary judgment to Scott Cohron Crutchfield and Crutchfield, DeCordova
& Chauveax, P.C. (1) In five appellate issues, Childs contends the trial court erred in (1)
granting summary judgment; (2) striking the affidavit of her expert; (3) granting a traditional
summary judgment; (4) granting a no-evidence summary judgment; and (5) granting
summary judgment on her causes of action for negligence, gross negligence, knowing
violation of the Deceptive Trade Practices Act, and breach of warranty. We affirm the trial
court's judgment.

 Childs sold a home to John and Katina Duke. Although Childs had twice treated the
house for termite infestations, she failed to disclose termite damage on the Seller's
Disclosure Notice that Childs executed as part of the transaction. See generally Tex. Prop.
Code Ann. § 5.008 (Vernon Supp. 2007). The inspector retained by the Dukes noted signs
of previous treatment and visible evidence of the previous presence of termites but did not
discover the active termite infestation in another part of the house. After closing, the Dukes
sued Childs and the inspection company for negligence and breach of contract, and sued
Childs for violating Section 5.008 of the Texas Property Code. The jury found Childs and
the inspection company breached their respective contracts with the Dukes but attributed all
of the damages to Childs. The jury found Childs knowingly and intentionally engaged in a
false, misleading, or deceptive trade practice and in unconscionable conduct, found Childs
committed common law fraud, and found Childs committed statutory fraud with actual
awareness but failed to find malice. On the single question submitted on actual or economic
damages, the jury found $7,736.40 for reasonable and necessary cost of repairs, $214.34 for
termite treatment, and $1,500 for loss of use of the property. The jury failed to find any
additional or exemplary damages on deceptive trade practices and statutory fraud but
awarded $8,500 in exemplary damages for common law fraud. Attorney's fees were tried
to the court, which awarded $56,360.50 for preparation and trial and conditionally awarded
additional sums for post-trial proceedings. The Dukes and Childs appealed timely but the
entire case settled prior to briefing and the appeal was dismissed on motion of the parties. 
See Duke v. Homeguard Pest Control, Inc.,No. 12-03-00364-CV, 2004 WL 583840 (Tex.
App.--Tyler Mar. 24, 2004, no pet.) (mem. op.). 

 Crutchfield and his law firm represented Childs through trial in the Duke litigation,
but did not represent her in the post-trial proceedings or the appeal. After the Duke litigation
settled, Childs filed this suit against Crutchfield and the law firm. Childs's original petition
alleged negligence and deceptive trade practices. Childs amended her petition to add a claim
for breach of implied warranty of good and workmanlike performance and an allegation of
mental anguish caused by the filing of an abstract of judgment in the Duke litigation. 

 Crutchfield and the law firm filed a combined traditional and no-evidence motion for
summary judgment. They asserted Childs had no evidence Crutchfield breached the standard
of care and that she had no expert evidence regarding the duty or standard of care Crutchfield
owed to Childs or whether the duty was breached. In response to the specific allegations in
Childs's petition, Crutchfield and the law firm asserted there was no evidence Crutchfield
breached any duty (1) by failing to raise ratification or waiver as a defense and failing to
move for summary judgment on said defenses; (2) by agreeing to submit DTPA issues to the
jury; (3) by agreeing to a bench trial on attorney's fees and by not submitting rebuttal
evidence; (4) by failing to introduce evidence the Dukes subsequently sold the house for
more than their purchase price; (5) by failing to address a wallpaper patching issue with
construction experts; (6) by failing to introduce evidence that Childs offered to repair the
termite damage; (7) by failing to file a third-party claim against Childs's realtor; and (8) by
failing to advise Childs when the judgment was signed and by refusing to file a motion for
new trial. 

 Crutchfield and the law firm also asserted there was no evidence of causation; that is,
no evidence that but for Crutchfield's acts or omissions Childs would not have been found
liable to the Dukes for actual and exemplary damages and attorney's fees. In response to the
specific allegations in Childs's petition, Crutchfield and the law firm asserted there was no
evidence (1) Crutchfield's failure to raise ratification or waiver as a defense, or his failure
to move for summary judgment on said defenses, caused Childs to be found liable to the
Dukes; (2) that his agreement to submit DTPA issues to the jury caused any harm to Childs;
(3) that his agreement to a bench trial on attorney's fees and his failure to present rebuttal
evidence regarding attorney's fees caused any harm to Childs; (4) that his failure to introduce
evidence the Dukes subsequently sold the house for more than their purchase price had any
impact on the jury's determination of damages; (5) that his failure to address the wallpaper
patching issue with construction experts caused Childs to be found liable for actual or
exemplary damages; (6) that his failure to introduce evidence that Childs offered to pay for
the repairs caused the jury to find Childs liable for exemplary damages; (7) that his failure
to file a third-party claim against Childs's realtor caused any harm to Childs; and (8) that his
failure to advise when the judgment was signed and his refusal to file a motion for new trial
caused Childs any harm. 

 The response filed by Childs included an affidavit by attorney Robert R. Debes, Jr.,
who offered his expert opinion that Crutchfield violated the standard of care he owed to
Childs in his defense of her in the Duke litigation. Crutchfield and the law firm filed written
objections to the affidavit. They argued that Debes's opinions regarding causation were
based upon pure speculation and thus unreliable, and that Debes's opinions were unreliable
because he misstated the record. They also claimed Debes was not qualified to render an
opinion regarding the standard of care of a reasonably prudent attorney in Jefferson County,
that Debes was not qualified to render an opinion regarding causation, that the affidavit did
not state the proper standard for establishing causation, that because the affidavit failed to
address the proper causation standard Debes's statement of opinion regarding causation
constituted no evidence, and that Debes failed to state that but for Crutchfield's negligent
performance Childs would have prevailed in the underlying suit or the judgment would have
been less. They also contended that Debes's affidavit failed to establish a breach of the
standard of care, failed to establish any harm resulting from not filing a motion for new trial,
and that the affidavit addressed matters unrelated to the allegations in the petition. The trial
court sustained the objections and ruled the affidavit was unreliable, inadmissible, and
constituted no evidence. The trial court granted both the traditional and the no evidence
motions for summary judgment and rendered a take nothing judgment. 

 "Generally, to recover on a claim of legal malpractice, a plaintiff must prove that (1)
the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach
proximately caused the plaintiff's injuries, and (4) damages occurred." Peeler v. Hughes &
Luce, 909 S.W.2d 494, 496 (Tex. 1995). "Breach of the standard of care and causation are
separate inquiries, however, and an abundance of evidence as to one cannot substitute for a
deficiency of evidence as to the other. Thus, even when negligence is admitted, causation
is not presumed." Alexander v. Turtur & Assocs., Inc., 146 S.W.3d 113, 119 (Tex. 2004). 
An objective standard applies. Cosgrove v. Grimes, 774 S.W.2d 662, 665 (Tex. 1989). "If
an attorney makes a decision which a reasonably prudent attorney could make in the same
or similar circumstance, it is not an act of negligence even if the result is undesirable." Id. 
Because "the trier of fact must have some basis for understanding the causal link between
the attorney's negligence and the client's harm" expert testimony may be required. 
Alexander, 146 S.W.3d at 119. 

 A failure of proof can result if expert testimony is limited to whether the
defendant violated the standard of care. Proof of causation of injury often
requires expert testimony concerning what the attorney should have done
under the circumstances. The expert testimony must be tied to the specific
conduct that is in issue. 

 

Id. (quoting 5 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 33.17 at 138-39
(5th ed. 2000)). 

 On appeal, Childs argues the trial court erred in excluding her expert's affidavit. All
expert testimony is subject to the relevance and reliability requirements of Rule 702. Tex.
R. Evid. 702; Guadalupe-Blanco River Auth. v. Kraft, 77 S.W.3d 805, 807 (Tex. 2002). An
expert must be qualified to render an opinion and the testimony must be relevant and based
on a reliable foundation. Cooper Tire & Rubber Co. v. Mendez, 204 S.W.3d 797, 800 (Tex.
2006). We review the trial court's determination regarding these requirements for abuse of
discretion. Id. Evidence that fails to meet the reliability standards is "not only inadmissible
but incompetent as well." City of Keller v. Wilson, 168 S.W.3d 802, 813 (Tex. 2005). 
Because an expert's bare opinion will not suffice, the substance of the expert's opinion
testimony must be considered and the underlying data independently evaluated to determine
whether the opinion itself is reliable. Kerr-McGee Corp. v. Helton, 133 S.W.3d 245, 254
(Tex. 2004). "In reviewing the reliability of expert testimony, the court is not to determine
whether the expert's conclusions are correct; rather, the court should determine only whether
the analysis used to reach those conclusions is reliable." Id. The trial court may conclude
an expert's opinion is unreliable if there is too great an analytical gap between the expert's
observations and his conclusions. Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d
713, 727 (Tex. 1998). The trial court need not admit opinion evidence which is "'connected
to existing data only by the ipse dixit of the expert.'" Id. (quoting Gen. Elec. Co. v. Joiner,
522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). "Close calls must go to the trial
court." Larson v. Downing, 197 S.W.3d 303, 304 (Tex. 2006). 

 Debes offered his expert opinion that Crutchfield's failure to raise ratification or
waiver as a defense, or his failure to move for summary judgment on said defenses, caused
Childs to be found liable to the Dukes. In his affidavit, Debes does not describe any of the
evidence that supports the affirmative defenses of ratification and waiver. Debes does not
explain how the defenses of ratification and waiver applied to the various claims asserted by
the Dukes. The summary judgment record shows that Crutchfield argued to the jury that the
false statement on the disclosure statement could not have caused damage to the Dukes
because two days later the Dukes obtained an inspection report that told them the house had
previous treatment and damage. Debes does not explain how Crutchfield violated the
standard of care by couching the discovery of prior termite treatment as a failure of proof on
an element of the causes of action on which the Dukes bore the burden of proof as opposed
to an element of affirmative defenses on which Childs would have borne the burden of proof. 
Debes's total failure to address the obvious strategy employed by Crutchfield presents a
serious analytical gap in Debes's assessment of breach of the standard of care. In addition,
Debes stated that Crutchfield failed to assert the plaintiffs' awareness of the termite damage
at any point in his defense of Childs, but that statement is contradicted on the face of the
summary judgment record. Moreover, Debes expresses the opinion that a summary judgment
would have been granted had it been filed, but the basis for that opinion is not apparent from
his affidavit. Debes provided his bare opinion without providing his analysis of the
underlying facts or explaining how that opinion was reached. Because Debes failed to link
his conclusions to the facts, the trial court could reasonably conclude that his opinion was not
reliable.

 Debes expresses his professional opinion that Crutchfield's agreement to submit
DTPA issues fell below the standard of care. Debes states that during the charge conference
the trial court made it clear that he was not going to submit fraud and DTPA jury questions,
and that Crutchfield agreed to the submission when plaintiffs' counsel objected. Debes states
that Crutchfield's performance fell below the standard of care because submission of DTPA
questions precluded submission of the common-law affirmative defense of waiver. Debes
does not explain how the submission of a DTPA question precluded submission of common-law affirmative defenses for fraud. During the charge conference, Crutchfield expressed his
concern that not submitting a DTPA issue might be reversible error, but Debes fails to
explain why that assessment was objectively unreasonable. Debes fails to explain how either
the purported tactical error or the attorney's failure to obtain the client's informed consent
to the decision affected the judgment. Furthermore, the Dukes recovered judgment for
common law fraud, not deceptive trade practices. The trial court could have determined
these analytical gaps were too great for Debes's expert opinion to be reliable.

 Debes stated that Crutchfield breached the standard of care by agreeing to a bench
trial on attorney's fees and by failing to present rebuttal evidence on the issue. According
to Debes, the preferred method would have been to have another attorney testify as to what
a reasonable and necessary fee would have been. Debes does not, however, identify what
evidence was in the record regarding attorney's fees, describe what other evidence was
available regarding attorney's fees, explain why the amount awarded was excessive, or
express an opinion about what amount of attorney's fees would have been reasonable. Debes
expressed his opinion that the failure to present any evidence in all likelihood resulted in an
excessive award, but he failed to explain the basis of his opinion. Thus, the trial court could
have concluded that the opinion was not reliable.

 Debes states that Crutchfield did "little if anything to personalize his client" and failed
to introduce evidence that Childs offered to pay for the repairs. In Debes's opinion, this
caused the jury to find Childs liable for exemplary damages. The summary judgment record
showed that Crutchfield made a tactical decision not to raise the offer to pay for the repairs
because of the prejudicial effect it would have on the jury's assessment of Childs's liability. 
Debes's affidavit does not explain why that tactical decision was objectively unreasonable. 
Also, Debes neither explains why the jury's observation of Childs would not have made them
aware of her age, nor does he explain how Childs's "deep ties to Beaumont" related to the
factors the jury charge instructed the jury to consider in assessing exemplary damages. The
trial court could reasonably have found that Debes failed to connect the basis of his opinion
to the facts of the case.

 Childs's response to the motion for summary judgment argues that Crutchfield failed
to introduce evidence that the Dukes subsequently sold the house for more than their
purchase price, but Debes's affidavit does not address this issue. Likewise, Childs's answers
to interrogatories complain that Crutchfield failed to address a wallpaper patching issue with
construction experts but Debes's affidavit does not address the matter or explain what
evidence was available and how it would have affected the case. Although Childs testified
in her deposition that she felt the realtor should have been a party to the suit, Debes does not
suggest that Crutchfield was negligent in not adding the realtor as a third-party defendant.
Because Debes did not address these matters in his affidavit, the trial court could not have
erred in excluding Debes's expert opinion regarding Crutchfield's decisions regarding these
issues.

 Finally, Debes states that Crutchfield's failure to advise Childs when the judgment
was signed and his refusal to file a motion for new trial for her "weakened her position" and
that Crutchfield should have "taken a more active position on settlement" after the Dukes
rejected Childs's counter-offer of settlement. Debes does not identify any reversible error
that could have been preserved in a motion for new trial but was not preserved for appellate
review in the motion for new trial that was filed in the case, nor does he explain how or why
Childs's position was weakened because Crutchfield did not file the motion. Childs filed a
motion for new trial, perfected an appeal, and voluntarily settled her dispute with the Dukes. 
Debes expresses his opinion that Childs could have settled for less had she settled earlier in
the process. According to Debes, Crutchfield should have explained that Childs would spend
"way more than $4,763.60 in defense costs" of the suit. The summary judgment record
shows Childs paid $4,000 in attorney's fees through the trial; the other expenses Childs
incurred arose post-trial and on appeal. The trial court could have reasonably determined that
Debes failed to explain the factual basis for his opinion. 

 Debes provided his opinion that Crutchfield's defense of Childs "caused and/or
contributed to the imposition of a judgment against her" and that the acts described in his
affidavit "in reasonable legal probability represent negligent legal representation by Mr.
Crutchfield which were substantial factors in bringing about the jury verdict and judgment
against Ms. Childs." He does not state an opinion that but for the specific acts or omissions
by Crutchfield the result of the trial would have been different. Thus, this general statement
of opinion by Debes does not establish causation and the trial court could have found it was
not reliable expert opinion evidence of causation. 

 Childs contends Debes's affidavit "is no different in substance than the affidavit
approved for use" in Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C., 180 S.W.3d 889,
892-93 (Tex. App.--Dallas 2005, pet. denied). The similarity between Debes's affidavit and
the affidavit in Allbritton is one of form, not of substance. In Allbritton, the only evidence
offered at trial on one of two plaintiffs' damages was the testimony of the plaintiff himself;
the jury found no damages for that plaintiff but found damages for the other plaintiff who
possessed financial experience. Id. at 891. In response to the motion for summary judgment
filed in the subsequent legal malpractice suit, an attorney's expert affidavit expressed an
opinion based upon certain pages of the record of testimony of the two plaintiffs in the
underlying trial, and stated that the failure to prepare the case for presentation of Allbritton's
damages and to retain an expert to evaluate and testify to those damages was the proximate
cause of damages to Allbritton. Id. at 892-93. The attorney explained that Allbritton did not
have the background or education to present testimony as to the methodology of calculating
damages and the methodology the plaintiff did use was incorrect because it was not
consistent with the methodology used by qualified damages experts. Id. at 893. The
attorney's affidavit was accompanied by an accountant's affidavit that supplied the correct
methodology for calculating the plaintiff's damages. Id. at 892, 893-94. Thus, the analyses
used to reach the experts' conclusions were apparent from the record and the trial court erred
in striking the affidavits. Id. at 894. Here, the trial court could reasonably conclude that the
analytical gaps in the expert's affidavit rendered his opinion too conclusory to be reliable. 
We hold the trial court did not abuse its discretion in striking the affidavit.

 Childs "does not believe that technically an expert's testimony is necessary in this
lawsuit[.]" When the legal malpractice case arises from prior litigation, the plaintiff must
prove that, but for the attorney's breach of his duty, the plaintiff would have prevailed in the
underlying case. Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.--Houston [1st
Dist.] 1998, pet. denied). The "wisdom and consequences" of the "tactical choices made
during litigation are generally matters beyond the ken of most jurors" for which expert
testimony must supply the causal link. Alexander, 146 S.W.3d at 119. 

 Childs supplied her own affidavit in response to the motion for summary judgment. 
In this affidavit, Childs describes the termite treatment, her experience listing the house for
sale and preparing the disclosure statement, the lack of direct communication between Childs
and the Dukes before closing, her contact with the Dukes concerning termite damage after
closing, her settlement offer to the Dukes, and her willingness to settle the case. Childs also
submitted excerpts from Crutchfield's deposition. Crutchfield admitted that he would
normally identify the areas where an expert may be needed and discuss the need for an expert
with his client, that he would normally outline what would be needed in the jury charge, and
that he would document significant efforts expended on behalf of his client in the client's
file. Crutchfield had been confident that Childs would be able to establish through her own
testimony that she had not been the one to patch the wallpaper. Crutchfield did not suggest
Childs was uncooperative and admitted Childs did not tell him he could not do something he
felt he needed to do in order to defend her. Crutchfield had an independent recollection of
performing legal research on the case for which no entries had been made in the file;
however, he could not recall researching theories of the admissibility of Childs's offer to
repair the termite damage or the profit made by the Dukes. He did not make a bill of
exception. The attorney representing the inspection company prepared a jury charge using
Pattern Jury Charge language that Crutchfield reviewed and adopted. Crutchfield did not
prepare a motion in limine because the motions prepared by the other parties adequately
covered the necessary issues; although he did admit he possibly could have limined mention
of the wallpaper patch until the Dukes produced proof that Childs put the patch there.
Crutchfield allowed plaintiffs' counsel to re-direct Mr. Duke after Homeguard's counsel
cross-examined him because Crutchfield wanted to keep the claims against Homeguard
separate from the claims against Childs. His focus was on the lack of contact between Childs
and the Dukes in the contract phase rather than Childs's efforts after the Dukes discovered
the live infestation. Crutchfield could not recall whether he objected to one of the jury
questions. Crutchfield agreed to try attorney's fees to the court because if they were
successful, fees would not be an issue and, if the defendants were unsuccessful the jury
would be inclined to give the plaintiffs' attorney whatever he asked for. Although he could
have presented evidence on attorney's fees, he did not do so. He discussed the jury verdict
with Childs when the jury returned its verdict and discussed the effect of the attorney's fees
hearing with her immediately, but he was not aware the judgment had been signed until he
received a copy of the abstract of judgment and he telephoned Childs that day or a day later. 
 Neither Childs's affidavit nor Crutchfield's deposition testimony establish the
standard of care or raise a fact issue on either Crutchfield's failure to meet the standard or
suit-within-a-suit causation. We hold the trial court properly granted summary judgment on
Childs's claim for legal malpractice. 

 Childs contends the trial court erred in granting summary judgment on her other
claims. She does not support her contention with any argument or authorities. Because the
issue is inadequately briefed, we decline to address it. See Tex. R. App. P. 38.1(h). 

 In conclusion, we hold that the trial court did not abuse its discretion in striking the
appellant's expert's affidavit and further, that the trial court did not err in granting summary
judgment for the appellees. The appellant's issues are overruled and the judgment is
affirmed.

 AFFIRMED.

 
 __________________________________

 CHARLES KREGER

 Justice


Submitted on September 13, 2007

Opinion Delivered April 10, 2008


Before McKeithen, C.J., Gaultney and Kreger, JJ.

1. In this Opinion, we refer to the individuals by their surnames and refer to the
professional corporation as "the law firm."