# Supreme Court of Texas

No. 22-1143

Henry S. Miller Commercial Company,
*Petitioner–Cross-Respondent*,

v.

Newsom, Terry & Newsom, LLP and Steven K. Terry,
*Respondents–Cross-Petitioners*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

JUSTICE BLAND, concurring in part and dissenting in part.

The Court agrees that the causation evidence is infirm. Yet it remands for a third trial, theorizing it might be possible to confect a hindsight allocation of responsibility that a competent expert could link to some damage caused by legal malpractice. It is questionable whether an attorney's strategic decision to keep a putatively culpable but judgment-proof codefendant out of a fraud case is negligent when one's own client also bears culpability. Whether adding another defendant magnifies the harm or merely shifts it is open to reasonable debate. Assuming such a decision one way or the other can be malpractice, it is not enough to presume harm—any harm—to a client found to have

committed fraud and caused only that damage resulting from the client's own conduct.

I agree with most of the Court's opinion, and in particular, the moral hazard to our justice system that arises when a lawyer assumes the role of judgment creditor to his former opponent and testifies contrary to the position he has very successfully advanced. Beyond that hazard, such expert testimony is neither consistent with the facts found in the underlying case—as any competent expert opinion must be—nor is it evidence of but-for causation of any damage. Because the expert testimony in this case is legally insufficient to establish legal malpractice as a cause of damage to the law firm's client, the Court should render judgment for the law firm. As it does not, I respectfully dissent from that part of the Court's opinion. I join the remainder of it.

**I**

In legal malpractice cases arising out of a lawyer's actions in representing a client in underlying litigation, the plaintiff must produce evidence from which a jury can reasonably infer that the attorney's conduct caused the client's harm.[1] Expert testimony is necessary to support this causal link.[2] The ground rules for this expert testimony are straightforward. First, the expert must show that, because of the attorney's negligence, the plaintiff either had to pay additional damages

---

[1] *Alexander v. Turtur & Assocs.*, 146 S.W.3d 113, 117 (Tex. 2004).

[2] *Id.* at 119–20 (observing that "the wisdom and consequences of these kinds of tactical choices made during litigation are generally matters beyond the ken of most jurors" and therefore expert testimony is necessary).

or failed to obtain the recovery it should have obtained.[3] Second, the expert testimony must be based on facts in evidence. An expert cannot assume facts contrary to undisputed underlying evidence to form an opinion. "[I]f the record contains no evidence supporting an expert's material factual assumptions, or if such assumptions are contrary to conclusively proven facts, opinion testimony founded on those assumptions is not competent evidence."[4] Speculation, subjective belief, and surmise are not competent evidence.[5]

The expert testimony in this case fails on both grounds. First, the experts made no attempt to support their but-for causation opinions. Henry S. Miller's malpractice theory is that the judgment amount against it would have remained exactly the same but allocated mostly, if not entirely, to judgment-proof defendant James Flaven, had he been added as a defendant. Even more, this theory relies on a hypothetical jury's allocation of fault to Flaven such that it would exceed the $6 million paid to satisfy the underlying judgment.

Henry S. Miller introduced the testimony of two witnesses to attempt to establish this novel causation theory. Marc Stanley, the attorney for the plaintiff in the underlying fraud case, testified that, had Henry S. Miller's lawyers designated Flaven as a responsible third

---

[3] *Elizondo v. Krist*, 415 S.W.3d 259, 263 (Tex. 2013) ("[L]egal-malpractice damages are the difference between the result obtained for the client and the result that would have been obtained with competent counsel.").

[4] *Hous. Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 833 (Tex. 2014).

[5] *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 712 (Tex. 1997); *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 350–52 (Tex. 2015).

party, the jury would have allocated 85% of the responsibility of the fraud to Flaven. He based his answer on "two things": first, "it's what I told my client could be a very likely outcome"—definitionally *ipse dixit*—and second, based on his experience, Flaven would have "offended" the jury, and thus it would have assigned 85 to 100% of the responsibility to Flaven. Stanley offered no facts to support this conclusion, relying totally on his significant litigation experience.

Stanley's opinion ignores that the trial court instructed the jury in the fraud case to award only those damages proximately caused by Henry S. Miller's fraud. Flaven's conduct did not enter into the jury's measurement, which was based on an instruction to view damage only as if *Henry S. Miller's* "representations had never been made." The jury was instructed that Henry S. Miller could be held liable only for representations it knew were false—Flaven's misrepresentations were to be excluded. As the trial court in the underlying case instructed:

> A real estate agent is not liable for a misrepresentation of a material fact made by buyer or its authorized representative unless the real estate agent knew of the falsity of the misrepresentation, and failed to disclose the real estate agent's knowledge of the falsity of the misrepresentation.

The jury thus confined its fraud finding, and the damages resulting from it, to Henry S. Miller. Henry S. Miller was not held liable for Flaven's conduct but for its own fraudulent concealment. An expert opinion that the jury must have awarded damages attributable to Flaven due to the attorney's negligence in failing to name him as a responsible third party lacks any but-for causation link.

4

Further, Stanley's testimony is inherently incompetent given the directly opposite position he advanced in the underlying fraud case: that Henry S. Miller was exclusively to blame for his client's injuries because *Henry S. Miller*, not Flaven, had undertaken the obligation to represent Stanley's client, Nussbaum, as Nussbaum's real estate agent. For that reason, Stanley's suit targeted *Henry S. Miller*, not Flaven. Had Stanley concluded that Flaven was mostly, if not entirely culpable, as he testified in this legal malpractice case, then it was Stanley's prerogative to name Flaven as a defendant among the others. He did not. Flaven was not Nussbaum's real estate agent. In a testimonial reversal, Stanley seeks to impose a judgment-proof defendant's putative culpability upon the lawyers—culpability he affirmatively disavowed during the real trial. Lawyers are not guarantors of an ephemeral recovery against a putative defendant now in the wind.

The second piece of evidence is similarly bereft of probative value. Expert Lewis Sifford testified "everyone agrees that Henry S. Miller was the innocent defendant," and had its attorneys designated Flaven as a responsible third party, then the jury would have assigned 100% of the liability to Flaven.

Sifford's conclusion rests on a fact not in evidence and *contrary* to established facts: the first jury did not find that Henry S. Miller was "the innocent defendant." Rather, the jury heard Henry S. Miller's argument that Flaven was solely responsible for the "carnage" and disbelieved it. The jury determined that Henry S. Miller was liable for fraud, a finding it was instructed not to make unless it found that Henry S. Miller knew that Flaven had lied and failed to disclose what it knew to its own client.

5

We discarded expert testimony that similarly took irrefutably false statements as the basis for its opinion in *Rogers v. Zanetti*,[6] another case-within-a-case legal malpractice appeal. The client's expert testified that the jury in the underlying trial awarded damages against a defendant due to legal malpractice.[7] But the expert disregarded the finding that legally sufficient evidence supported the damages award. "This basis for [the expert]'s opinion is thus in fatal tension with that undisputed fact and cannot support a competent opinion."[8] Sifford's testimony that Henry S. Miller was "innocent" is similarly in fatal tension with the jury's verdict rendered in the fraud case. His opinion is thus not competent to support a causation finding.

## II

The malpractice jury heard no probative evidence supporting causation. When evidence of causation is speculative or conclusory, the proper course is to render judgment for the defendant. We affirmed summary judgment for the malpractice defendant in *Zanetti* after determining that the proffered causation testimony was speculative and unreliable.[9] Similarly, in *Alexander v. Turtur & Associates*, another case-within-a-case legal malpractice appeal, this Court concluded that the causation evidence did not support the inference that the attorney's

---

[6] 518 S.W.3d 394 (Tex. 2017).

[7] *Id.* at 410.

[8] *Id.*

[9] *Id.* at 404–12.

6

negligence caused the client's injuries.[10] For want of causation, we rendered judgment that the client take nothing.[11] We likewise have rendered judgment when other kinds of claims fail for want of expert causation testimony.[12]

Rendition is the proper disposition in this case as well. Though the Court agrees that the expert testimony is speculative, it characterizes it as failing to prove the amount of damages. The Court does not identify any competent causation testimony, but instead takes the experts at their word that *of course* the damages would have been different—and more favorable to Henry S. Miller—absent legal malpractice.

Because the Court characterizes the failure of causation evidence as a partial failure of damages evidence, it remands for yet a third trial. It cites *Fortune Production Co. v. Conoco, Inc.*,[13] for the proposition that "where there is evidence of some fraud damages, but there is no evidence

---

[10] 146 S.W.3d at 120–21.

[11] *Id.* at 122.

[12] *E.g.*, *Helena Chem. Co. v. Cox*, 664 S.W.3d 66, 82 (Tex. 2023) (rendering judgment where farmers' experts failed to connect defendant's aerial herbicide application to the kinds of losses actually observed and failed to exclude alternative causes); *Pediatrics Cool Care v. Thompson*, 649 S.W.3d 152, 164 (Tex. 2022) (rendering judgment where expert's testimony failed to do more than speculate that providers' negligence caused the patient's death); *Gharda USA*, 464 S.W.3d at 350–53 (reinstating take-nothing judgment after determining experts' testimony on causation suggested only the possibility, not the probability, that defendant's conduct caused the plaintiff's injuries); *Hous. Unlimited*, 443 S.W.3d at 837–38 (rendering take-nothing judgment after concluding expert failed to connect defendant's conduct to claimed diminution in market value of property and exclude other causes).

[13] 52 S.W.3d 671 (Tex. 2000).

7

to support the full amount of damages found by the jury, remand for a new trial is the appropriate remedy."[14] That much is true. In this case, however, the expert testimony is devoid of evidence of segregable damage attributable to legal malpractice.

In *Fortune Production*, the jury awarded $5 million in damages to natural gas sellers misled into signing unfavorable contracts, though the sellers failed to distinguish between damages occurring before and after they knew of the misrepresentations.[15] This Court determined that some evidence supported the finding that the defendant's misrepresentations had caused the former—though not to the extent the jury had found— but not the latter, and it remanded for the factfinder to determine the amount of supportable damages.[16] We have no basis to make a similar differentiation in this case.

The Court also cites *Guevara v. Ferrer*,[17] in which this Court remanded an auto collision case for remittitur or a new trial after determining that expert testimony was required to link the plaintiff's medical expenses related to respiratory and kidney failure to the collision.[18] Our Court agreed that lay testimony could support that the plaintiff's "immediate post-accident condition which resulted in his

---

[14] *Supra* at 3 n.5.

[15] *Fortune Prod.*, 52 S.W.3d at 675, 79–80.

[16] *Id.* at 682 (determining that a contemporaneous agreement with a nonparty was some evidence that the sellers could have negotiated a more favorable contract, but not evidence of the full amount of damages awarded by the jury).

[17] 247 S.W.3d 662 (Tex. 2007).

[18] *Id.* at 669–70.

being transported to an emergency room and examined in the emergency room were causally related to the accident," and thus we concluded that the evidence was legally sufficient to support a finding that some of his medical expenses were causally related to the accident.[19]

*Fortune Production* and *Guevara* are two of several cases involving segregable damages remanded for a new trial. In *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.*,[20] the Court determined that expert testimony supported a damages award of only $231,000, not the $700,000 the jury awarded.[21] In *Texarkana Memorial Hospital, Inc. v. Murdock*,[22] the Court concluded that the evidence supported causation of a patient's injuries related to meconium aspiration but not causation of every expense incurred during the patient's hospital stay.[23]

These cases highlight why the failure in this case is one of causation, not the amount of damage. *Fortune Production*, *Guevara*, *Formosa Plastics*, and *Texarkana Memorial Hospital* each involve only a partial failure of damages evidence. In each case, the Court agreed that causation was established as to some calculable amount but not the full amount awarded. The Court's opinions in those cases guide the trial courts in distinguishing supported and unsupported damages. The

---

[19] *Id.*

[20] 960 S.W.2d 41 (Tex. 1998).

[21] *Id.* at 51.

[22] 946 S.W.2d 836 (Tex. 1997).

[23] *Id.* at 840–41.

Court's opinion today remands the case with no more guidance than "try again." The omission is readily explicable: no legal expert, even with decades of sophisticated experience, could testify as to an amount that a hypothetical jury in the underlying fraud case would have awarded had Flaven been designated. The real jury was confined to damages resulting from Henry S. Miller's conduct and instructed to exclude Flaven's conduct. The real jury awarded $12 million—far short of the $20 million experts proffered as damages in the underlying trial.[24] Perhaps the missing $8 million is the amount the jury attributed to Flaven's conduct, and the hypothetical jury would have attributed $12 million in damages to Henry S. Miller regardless of Flaven's designation. To arrive at this or any number, however, is completely speculative and at odds with the real jury's findings.

Similarly, no facts exist that a legal malpractice expert could rely on to demonstrate that the jury would have allocated 85% of the responsibility for the fraud to Flaven. The real jury declined to credit Henry S. Miller's argument that Flaven was entirely responsible for the fraud. No matter how qualified, a testifying expert in this case lacks the underlying facts to demonstrate through competent testimony that Flaven's name on the verdict form would have changed Henry S. Miller's damages.

*      *      *

---

[24] *Defterios v. Dall. Bayou Bend, Ltd.*, 350 S.W.3d 659, 663 (Tex. App.—Dallas 2011, pet. denied).

Proving a case-within-the-case outcome in legal malpractice is difficult. While not foreclosing the possibility that an expert could develop a reasoned basis, grounded in facts, for a hypothetical jury's allocation of responsibility, the expert testimony in this case falls well short of the mark. The malpractice jury heard no probative evidence supporting causation. When evidence of causation is speculative or conclusory, the proper course is to render judgment for the defendant. Because the Court does not, I respectfully dissent from its causation opinion and the judgment remanding this case for a third trial.

Jane N. Bland
Justice

**OPINION FILED:** December 31, 2024