Opinion issued August 5, 2010

                                                                        

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00404-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



CHRISTINE FINGER, Appellant

 

V.

 

HUGH M. RAY, III AND WEYCER, KAPLAN, PULASKI, AND
ZUBER, P.C., Appellees

 

 



On Appeal from the 151st District Court

Harris County, Texas

Trial Court Cause No. 2007-71210

 

 



O P I N I O N

          A
client sued her lawyer, alleging wrongful acts arising from his representation
of her during bankruptcy litigation.  The
trial court granted summary judgment in favor of the lawyer and his firm on the
client’s claims, but it denied summary judgment on her claim for equitable
disgorgement of the attorney’s fees she incurred.  After the trial court denied summary judgment
on the fee forfeiture claim, the client abandoned it, and pursues on appeal
only her claims for actual damages.  The
client contends that (1) the trial court erred in requiring expert testimony to
prove causation of actual damages, and (2) her lay testimony about causation
raises a material fact issue.  We hold
that the causal connection between the conduct alleged and any injury is not
within a jury’s common understanding, and thus the trial court properly ruled
that expert testimony was necessary to show that the lawyer’s acts caused the client
actual damages.  We affirm the judgment
of the trial court.

Background

A Lawsuit and Judgment

In 2003, Christine Finger borrowed
$10,000 from David Reitman, who accepted jewelry,
which Finger valued at $29,495, as collateral. 
Although Finger repaid a portion of the loan and Reitman
forgave the balance, he did not return the jewelry.  Instead, he told Finger that someone had
stolen it from his car.  Finger hired a
lawyer and sued Reitman for fraud, breach of
contract, and various other causes of action.  She moved for summary judgment on the breach
of contract claim.  The trial court granted
it, entering an “Agreed Final Summary Judgment,” awarding Finger $29,495 in
damages and $1200 in attorney’s fees. 
Shortly after the trial court signed the final judgment, Reitman told Finger that he planned to file for bankruptcy.

The Bankruptcy Proceedings

Upon hearing this news, Finger hired
the defendants in this case, Hugh M. Ray and Weycer,
Kaplan, Pulaski & Zuber, P.C., to represent her
in collecting the judgment against Reitman and in any
potential bankruptcy litigation. 
According to Finger, she hired Ray based upon his “express
representations . . . that he would collect [her] judgment through
state court collection methods that would also provide [her] with attorney[’]s
fees and costs of pursuit and collection, that the judgment that [she]
possessed was based upon fraud by Mr. Reitman, that
if Mr. Reitman filed personal bankruptcy that he, Mr.
Ray, would file an action in the bankruptcy court to except [her] claim out of
the bankruptcy, and then he would further proceed with the collection outside
of any bankruptcy proceeding.”

Reitman filed for bankruptcy.  During the pendency of the proceedings, Ray
conducted an examination of Reitman. Ray and the
bankruptcy trustee then jointly filed a Section 727 action to bar Reitman’s
bankruptcy discharge.  See 11 U.S.C. § 727 (2006).  Ray did not file a Section 523 action, which
seeks to remove a specific debt from the debtor’s discharge.  See
11 U.S.C. § 523 (2006).  Ultimately,
the bankruptcy court approved a settlement between Finger and Reitman, and Reitman paid Finger
$40,700.  Finger paid $23,500 to Ray for
attorney’s fees and expenses.  After
paying her lawyer, Finger collected a net amount of $17,200 from the bankruptcy
settlement in satisfaction of her state court judgment against Reitman.

A Malpractice Lawsuit

Finger then sued Ray for legal
malpractice, breach of fiduciary duty, and breach of contract.  Finger alleged that Ray (1) failed to file a
Section 523 action to except her claim from Reitman’s discharge, (2) failed to
disclose that he had not filed a Section 523 action, (3) falsely represented to
Finger that he filed a Section 523 action instead of a Section 727 action, and
(4) billed and collected excessive and unreasonable fees.  Finger later amended her petition to add a
cause of action for DTPA violations. 
Finger sought a refund of the attorney’s fees and expenses that she had
paid to Ray, and $225,000 in mental anguish damages.

Ray moved for a traditional and a
no-evidence summary judgment on all of Finger’s claims, contending that Ray
properly pursued a Section 727 action to collect Finger’s judgment, and that
his work obtained successful results. 
Thus, according to Ray, Finger could not meet the “suit within a suit”
causation requirement to recover damages for her claims.  Finger could not establish that, but for
Ray’s conduct, she would have obtained a better net result in the underlying
suit.  He also denied any
misrepresentation and contended that Finger had failed to allege a serious
breach of fiduciary duty that would require Ray to forfeit the fees he had
charged her.  In the no-evidence summary
judgment motion, Ray challenged each element of Finger’s claims, including
causation and damages.

In response, Finger amended her
petition to drop her claims for legal malpractice and breach of contract and to
proceed on her breach of fiduciary duty, DTPA, and fee forfeiture claims.  In Finger’s summary judgment response, she
contended that whether she could have prevailed in a section 523 action is
irrelevant to her claims, because Ray falsely represented to Finger that he
would file a section 523 action, not a section 727 one, and Finger paid $23,500
in attorney’s fees on the basis of this representation.  Finger contended that these claims did not
require her to prove “suit within a suit” causation, and she therefore did not
need expert testimony to establish liability or causation.

Finger attached her affidavit and
excerpts from her deposition testimony as summary judgment evidence.  She averred that she had hired Ray based on
his express representations that (1) he would pursue state court collection
methods, (2) her judgment against Reitman was based
upon fraud, (3) Ray would file an action to except Finger’s claim out of
Reitman’s bankruptcy proceeding, and (4) Ray would proceed with collection
outside of the bankruptcy proceeding. 
Finger further averred that but for these representations, she never
would have hired Ray, but would have instead “simply filed [her] claim with the
bankruptcy court and negotiated with Mr. Reitman on
the settlement that [she] knew he would make, based upon conversations with
him.”  Finger finally stated that,
although she obtained a settlement with Reitman for
$40,700, she would have been able to obtain the same settlement without having
to pay $23,500 in attorney’s fees, and thus Ray’s services had no value to her.  Finger did not offer an affidavit or
testimony from a licensed attorney to support her claims.

The trial court granted summary
judgment on Finger’s DTPA claim and her breach of fiduciary duty claim for
actual damages, and denied summary judgment on the breach of fiduciary duty
claim to the extent that Finger sought equitable fee forfeiture.  In the summary judgment order, the trial
court observed that Finger lacked the necessary expert testimony to establish
causation because “[a]ll of Plaintiff’s
claims . . . are essentially claims that but for the
alleged misrepresentations by Defendants about proceeding under section 523 as
opposed to section 727 of the bankruptcy code, Plaintiff would have simply
filed a claim in the bankruptcy court and settled her claim with the bankrupt
debtor or otherwise recovered more than she netted based upon Defendant’s
efforts.”  The trial court stated that
Finger required a bankruptcy law expert to create a fact issue “on her ability
to have, at a minimum, collected more than what she netted in this case had she
done as she claims she could have and merely ‘filed a claim.’”

After the trial court’s rulings,
Finger non-suited her claim for fee forfeiture and appealed the trial court’s
grant of summary judgment.

Discussion

Standard of Review

          We
review de novo the trial court’s ruling on a motion for summary judgment.  Mann Frankfort Stein & Lipp Advisors,
Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  In a traditional motion for summary judgment,
the movant must establish that no genuine issue of
material fact exists and the party is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  A party may move for no-evidence summary
judgment on the ground that no evidence exists of one or more essential
elements of a claim on which the adverse party bears the burden of proof at
trial.  Tex.
R. Civ. P. 166a(i).  The trial court must grant a no-evidence
summary judgment motion unless the non-movant
produces competent summary judgment evidence that raises a genuine issue of
material fact.  Id.  To determine if the non-movant raises a fact issue, we review the evidence in the
light most favorable to the non-movant, crediting
favorable evidence if reasonable jurors could do so, and disregarding contrary
evidence unless reasonable jurors could not. 
See Fielding, 289 S.W.3d at
848 (citing City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005)).  We
must review all of the summary judgment grounds on which the trial court ruled
that are dispositive of the appeal, and we may consider any other grounds on
which the trial court did not rule.  See Baker Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d 1, 5 (Tex. 1999)
(citing Cincinnati Life Ins. Co. v. Cates,
927 S.W.2d 623, 624 (Tex. 1996)).

Summary Judgment Objections

Before addressing the merits, we
review Finger’s appellate challenges to the trial court’s rulings on Ray’s
objections to statements in Finger’s affidavit. 
The trial court sustained four of Ray’s five objections.  Finger challenges only two of these adverse rulings
on appeal.  First, Ray objected to
Finger’s assertion that, upon Reitman’s bankruptcy, “[she] would have simply
filed [her] claim with the bankruptcy court and negotiated with Mr. Reitman on the settlement that [she] knew he would make,
based upon conversations with him, and would not have paid Mr. Ray and his law
firm from [her] own funds the sum of $23,500.”  Ray contended that the statement is
speculative and based on hearsay. 
Second, Ray objected to Finger’s statement that she would have been able
to achieve the same settlement without paying $23,500 to Ray because she is not
a competent witness to offer such an opinion.

We review the trial court’s decision
to sustain objections to summary judgment evidence for abuse of
discretion.  Bradford Partners II, L.P. v. Fahning, 231 S.W.3d 513, 521 (Tex. App.—Dallas 2007, no
pet.); Cruikshank v. Consumer Direct Mtg.,
Inc., 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet.
denied).  We hold that the trial
court properly sustained the first objection on the basis of hearsay—the
statement relies on an out of court declarant (Reitman), and Finger offered it for the truth of the matter
asserted.  See Tex. R. Evid. 801(d).  With respect to the second objection, our
causation analysis addresses this evidence, and thus Finger cannot show any
harm from the trial court’s ruling.  See Interstate Northborough P’ship v. State, 66 S.W.3d 213, 220 (Tex. 2001)
(“Typically, a successful challenge to a trial court’s evidentiary rulings
requires the complaining party to demonstrate that the judgment turns on the
particular evidence excluded or admitted.”).

The Nature of the Claims

          According to Finger, Ray violated
Sections 17.46(b)(5), (7), (12), and (24) and Section
17.50(a)(3) of the DTPA.[1]  In addition, she alleges that Ray breached his fiduciary duty
to her by concealing from her the approach he planned to take in collecting the
judgment against Reitman.[2]  Factually, Finger alleges that Ray violated
the DTPA and breached his fiduciary duties to her by:  (1) falsely representing to Finger that he
would except Finger’s judgment against Reitman from
Reitman’s bankruptcy; (2) falsely representing to Finger that Ray would seize
Reitman’s property separately from the bankruptcy proceeding to satisfy the
judgment; (3) falsely representing to Finger that Ray would file a Section 523
action to except Finger’s judgment from discharge; (4) failing to disclose that
Ray would not file an action to except Finger’s judgment from Reitman’s
discharge to induce Finger into employing Ray; and (5) billing and collecting
excessive fees because Ray’s services were unnecessary.  Accepting these liability allegations as
true, we examine whether Finger has shown that they caused her actual damages.

Expert Testimony to Prove Causation

          The
causation debate here is whether expert testimony to prove causation is
required under these facts, and not the adequacy of a particular expert
opinion, as Finger offered none.  To prevail on a DTPA claim, the plaintiff
must prove that the defendant’s statutory violation is a producing cause of the
injury.  Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp.
2009); Alexander v. Turtur
& Assocs., Inc., 146 S.W.3d 113, 117 (Tex. 2004); Hoover v. Larkin, 196 S.W.3d 227, 232 (Tex. App.—Houston [1st
Dist.] 2006, pet. denied) (“A plaintiff may recover all damages, including
attorney’s fees, that are the result of the defendant’s wrongful acts, but the
burden remains on the plaintiff to demonstrate such causation.”).  To prevail on a breach of fiduciary duty
claim, the plaintiff must prove that the defendant’s breach of their fiduciary
duties proximately caused the plaintiff’s damages.  Abetter Trucking Co. v. Arizpe,
113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.).  Both proximate and producing cause encompass
causation in fact, which requires
proof that the defendant’s act or omission was a substantial factor in bringing
about the injury, without which the injury would not have occurred.  Prudential
Ins. Co. of Am. v. Jefferson Assocs., 896 S.W.2d 156, 161 (Tex. 1995); Thomas v. CNC Invs., L.L.P., 234
S.W.3d 111, 124 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  In addition to cause in fact, proximate cause
also requires foreseeability.  See Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex.
2001); Thomas, 234 S.W.3d at 124.

If the damages sought are those which
would have been recovered in an underlying suit save for the lawyer’s wrongful
conduct, then to establish causation, a plaintiff must prove a “suit within a
suit”:  that, but for the lawyer’s breach
of his duty, the plaintiff would have recovered these damages.  Hoover,
196 S.W.3d at 231. 
The trier of fact must have some basis for
understanding the causal link between the attorney’s wrongful conduct and the
injury.  Although a client’s lay
testimony can provide this link in some cases, in others, the “connection may
be beyond the jury’s common understanding and require expert testimony.”  Alexander,
146 S.W.3d at 119.

Finger responds that her claims are
independent claims for breach of fiduciary duty and DTPA violations, and
neither claim requires Finger to prove “suit within a suit” causation.  See
Latham v. Castillo, 972 S.W.2d 66, 69 (Tex. 1998).  On these facts, we disagree.  A bankruptcy judge must evaluate and approve
all settlements of claims against the debtor, thus, to prove causation,
Finger’s claims require proof that the results she would have obtained without Ray’s
representation would be better than she actually achieved with it.  As the Texas Supreme Court observed in a
similar case involving DTPA violations alleged against a lawyer:  “[T]he decisionmaker
here was the bankruptcy judge . . . [who] did not testify
as to how he might have ruled if the case had been presented differently.  Without expert testimony, the jury had no
direct evidence explaining the legal significance of the omitted
evidence.”  Alexander, 146 S.W.3d at 119.

Finger attempts to distinguish Alexander by contending that, if Ray had
not made affirmative misrepresentations about his services to her, then she
would never have hired him, and would not have incurred $23,500 in attorney’s
fees.  In other words, regardless of the
amount she might have recovered from Reitman without
using Ray’s services, she would not have expended the $23,500 she paid to him in
fees.  But this ignores Finger’s recovery
of over $40,000, and her net gain from Ray’s representation.  Finger did not sustain actual losses—rather, she made money on the legal pursuit of her
bankruptcy claim.  Proof that her gains
would have been the same or higher without using Ray’s services requires an
evaluation of alternative litigation strategies and outcomes in the bankruptcy
court.  Such an evaluation is within the
ambit of a legal professional, not a lay person.

Finger relies on the Fort Worth Court
of Appeals’ decision in Delp v. Douglas and the Fifth Circuit’s
decision in Streber v. Hunter to urge that she was the
ultimate decision-maker in engaging Ray’s services, and thus her lay testimony
is sufficient to prove causation.  See Delp v.
Douglas, 948 S.W.2d 483, 495–96 (Tex. App.—Fort Worth 1997), rev’d on other grounds, 987 S.W.2d 879 (Tex. 1999); Streber v. Hunter, 221 F.3d 701, 726–27 (5th Cir. 2000).  But in Alexander,
the Texas Supreme Court rejected the analysis in those cases, noting that in
both of them the clients “made the decisions and took the actions that resulted
in their injuries” because of the lawyers’ bad advice.  Alexander,
146 S.W.3d at 119. 
In contrast, both in this case and in Alexander, whether the alleged wrongful conduct caused any damage
hinges on the outcome of the underlying legal proceedings.  See id.
at 118–19.  The
loss here does not stem from Finger as the sole “decision maker,” but requires
a second piece:  that, without hiring
Ray, she would have obtained a better result, and netted more money than she
did.  Id.;
see also Hoover, 196 S.W.3d at 233
(“To the extent she seeks attorney’s fees as actual damages,
[the plaintiff’s] lack of causation evidence defeats her.”).  And, Finger made two decisions—not only the
one to hire Ray, but also the one to accept the court-approved settlement
obtained after she employed Ray’s services.

Finger in essence seeks a refund
because of Ray’s alleged misrepresentations, regardless of whether she
sustained any loss from them.  And had
Finger chose to pursue a claim for equitable fee forfeiture based on a “clear
and serious” breach of fiduciary duty, upon proof of such a claim, a refund she
could seek.  See Burrow v. Arce, 997
S.W.2d 229, 246 (Tex. 1999).  But
Finger abandoned this claim in the trial court. 
She offered no evidence that the rate Ray charged or the hours he worked
on her case were unreasonable, and she chose not to seek fee forfeiture based
on wrongful conduct.  Given her net recovery
of $17,200, after attorney’s fees, without expert testimony, the record
contains no competent evidence that Ray’s alleged wrongful conduct caused her
actual damages; thus, we uphold the trial court’s summary judgment.  See Alexander, 146 S.W.3d at 119 (“Breach of the standard of care
and causation are separate inquiries, however, and an abundance of evidence as
to one cannot substitute for a deficiency of evidence as to the other.”).

Mental Anguish Damages

In addition to actual damages, Finger
seeks damages for mental anguish due to Ray’s alleged breach of fiduciary duty
and DTPA violations.  The DTPA allows a
plaintiff to recover mental anguish damages if the plaintiff can establish that
the defendant committed the actionable conduct knowingly or intentionally.  Tex.
Bus. & Com. Code Ann. § 17.50(b) (Vernon Supp. 2009); see also City of Tyler v. Likes, 962
S.W.2d 489, 496 (Tex. 1997) (“Mental anguish is also compensable as the
foreseeable result of a breach of duty arising out of certain special
relationships.”); Perez v. Kirk & Carrigan, 822 S.W.2d 261, 266–67 (Tex. App.—Corpus
Christi 1991, writ denied) (holding client could recover mental anguish damages
for attorney’s breach of duty of confidentiality).  In evaluating the record, “we apply
traditional ‘no evidence’ standards to determine whether the record reveals any
evidence of a ‘high degree of mental pain and distress’ that is ‘more than mere
worry, anxiety, vexation, embarrassment, or anger’ to support any award of
damages.”  Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995) (citing J.B. Custom Design & Bldg. v. Clawson,
794 S.W.2d 38, 43 (Tex. App.—Houston [1st Dist.] 1990, no writ)); El-Khoury v. Kheir, 241 S.W.3d 82, 87–88 (Tex. App.—Houston [1st
Dist.] 2007, pet. denied).  Here, Finger
does not allege that Ray caused a physical injury to her, but a financial
one.  In such cases, although the law
does not always require direct evidence of the nature, duration, or severity of
mental anguish damages, “the absence of this type of evidence, particularly
when it can be readily supported or procured by the plaintiff, justifies close
judicial scrutiny . . . .”  Parkway
Co., 901 S.W.2d at 444.

Finger attached excerpts from her
deposition testimony to her summary judgment response to attempt to raise a
genuine issue of material fact regarding the existence of mental anguish
damages.  Finger testified:

Q:      Have you
ever seen—and by “see,” I mean been treated by or evaluated by any
psychiatrist, psychologist or mental healthcare provider for mental anguish
that you say was caused by Mr. Ray or Weycer Kaplan?

 

A:      Not from
the dates that you’re requesting.

 

. . . . 

 

Q:      Ms.
Finger, have there been any physical manifestations of this mental anguish you
say you suffered as a result of the conduct of Mr. Ray and Weycer
Kaplan?

 

A:      Yes, sir.

 

Q:      What are
those?

 

A:      I had
anxiety, heart palpitations and loss of hair, stress, just went in for a stress
test and had to get—couldn’t sleep.

 

Q:      All as a
result of Weycer Kaplan and Mr. Ray?

 

A:      Well, I
don’t really have a lot of other stress in my life.  I’m not a person that doesn’t handle
stress.  I’ve lived through 9/11 in my
industry.  I live it every day.  I’ve never been to any kind of therapists,
doctors, help or anything else with any stress-related problems.

 

Q:      Did. Mr. Reitman maybe cause some of that
stress?

 

A:      Oh, I’m
sure he did but not something that I can’t handle because I think that I’m the
type of person that if something ends and is okay by me, then it’s okay.  But if something ends to where I feel like it
can’t be peaceful or without closure that has been totally mishandled, that’s
where the stress comes in.

 

In Parkway, Woodruff testified that she was “hot,” “very disturbed,”
“[the situation] was just upsetting,” and she was “just upset” and the Texas
Supreme Court held that although Woodruff “felt anger, frustration, or
vexation,” these emotions did not rise to the level of compensable mental anguish.  Id.
at 445; see also Saenz v. Fid. &
Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996) (holding that
plaintiff’s statement that she “worried . . . a
lot” did not establish compensable mental anguish damages).  Similarly, Finger’s testimony establishes
that she felt worry, anxiety, and stress due to Ray’s conduct.  Finger’s testimony does not, however, provide
evidence of a “high degree of mental pain and distress” that is “more than mere
worry, anxiety, vexation, embarrassment, or anger” and that caused a
“substantial disruption in [her] daily routine.”  Parkway
Co., 901 S.W.2d at 444.  We therefore hold that Finger fails to raise
proof that supports the existence of mental anguish damages as the law defines
it.  See
id.

Conclusion

Because the causal connection between
the alleged wrongful conduct and any actual damages sustained in this case is
not within the common understanding of jurors, the law requires expert
testimony to establish proximate and producing cause.  We hold that the summary judgment record
contains no evidence to raise a fact issue that the alleged wrongful conduct
caused actual damages or mental anguish. 
We therefore affirm the judgment of the trial court.

 

 

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Jennings,
Hanks, and Bland.

Justice Jennings,
dissenting.

 











[1] Section 17.46(b)(5)
prohibits the representation that services have sponsorship, approval,
characteristics, ingredients, uses, benefits, or quantities which they do not
have.  See Tex. Bus. & Com. Code
Ann. § 17.46(b)(5) (Vernon Supp.
2009).  Section 17.46(b)(7)
prohibits the representation that services are of a particular standard,
quality, or grade, when they are of another. 
Id. § 17.46(b)(7).  Section 17.46(b)(12) prohibits the representation that an agreement confers
or involves rights, remedies, or obligations which it does not have or
involve.  Id. § 17.46(b)(12).  Section 17.46(b)(24)
prohibits the failure to disclose information concerning services which was
known at the time of the transaction if the failure was intended to induce the
consumer into a transaction into which the consumer would not have entered had
the information been disclosed.  Id. § 17.46(b)(24).  Additionally, Section 17.50(a)(3) prohibits unconscionable acts or courses of action.  Id.
§ 17.50(a)(3).

 





[2] Ray contended in the trial court that Finger’s claims
are really ones for legal malpractice that she improperly has recast as claims
for breach of fiduciary duty and DTPA violations.  See
Murphy v. Gruber, 241 S.W.3d 689, 697 (Tex. App.—Dallas 2007, pet. denied)
(“[C]haracterizing conduct as a ‘misrepresentation’
or ‘conflict of interest’ does not alone transform what is really a
professional negligence claim into either a fraud or breach-of-fiduciary-duty
claim.”); Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex.
App.—Houston [1st Dist.] 1998, pet. denied). 
As such, he argues, Finger was required to produce evidence from an
attorney that Ray’s conduct fell below a reasonable care standard.  Because we affirm the summary judgment on
lack of competent evidence of causation for each of Finger’s theories, we do
not reach Ray’s contention that expert testimony was necessary to prove
liability.