# NO. 12-20-00172-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *WINSTEAD PC AND JAMES RUIZ, APPELLANTS* | § | *APPEAL FROM THE 281ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *USA LENDING GROUP, INC., APPELLEE* | § | *HARRIS COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

This is an interlocutory appeal brought pursuant to the Texas Citizens Participation Act (TCPA).[1] Winstead PC and James Ruiz (collectively Winstead) appeal the denial of their motion to dismiss the legal malpractice suit brought by USA Lending Group, Inc. In their sole issue, Winstead asserts the trial court erred in denying their motion to dismiss. Because USA Lending failed to establish its prima facie case, we reverse and remand for further proceedings.

### BACKGROUND

Winstead represented USA Lending in litigation filed in federal district court against its former employee, Mike Ahmari, for breach of fiduciary duty. USA Lending asked for actual and exemplary damages and a declaratory judgment with respect to the rights and interests of the parties to certain domain names and toll-free numbers. Because Ahmari never responded to the lawsuit, Winstead, on USA Lending's behalf, filed a motion for entry of a default judgment. In that motion, Winstead requested a default judgment declaring USA Lending the legal owner to all rights and interests in a specified domain name and toll-free number and that Ahmari be ordered to convey the property to USA Lending. The court rendered a default judgment in favor of USA Lending, finding that Ahmari breached his fiduciary duties and that USA Lending is the

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-.011 (West 2020 & Supp. 2020).

1

legal owner of all right, title, and interest in and to a specified domain name and toll-free number. Additionally, the court ordered Ahmari to transfer all rights, title, and interests to the domain name and phone number to USA Lending.

USA Lending sued Winstead for legal malpractice complaining that Winstead's errors and omissions caused USA Lending to lose "in excess of $1,000,000.00 that would more likely than not been included in and ordered by the judgment." Winstead answered and filed a motion to dismiss pursuant to the TCPA contending that the underlying litigation is based on the constitutionally protected right to petition. They further argued that, because the claim is based on communications in connection with a judicial proceeding, the suit must be dismissed because USA Lending cannot provide clear and specific evidence demonstrating a prima facie case for each essential element of its claim. USA Lending argued that the malpractice allegations are based on a failure to communicate and the negligent legal advice is merely related to a judicial proceeding, therefore the TCPA does not apply. It further argued that the commercial speech exemption applies or, alternatively, USA Lending established a prima facie case of negligence against Winstead, either of which would lead to a ruling in its favor. After a hearing, the trial court denied the motion to dismiss.

## TCPA

In their sole issue, Winstead asserts the trial court erred in denying their motion to dismiss because the TCPA applies to legal malpractice cases involving the quality and substance of a lawyer's communications with the court in an underlying litigation, and USA Lending adduced no competent evidence that Winstead's alleged breach of the standard of care caused any harm.

### Standard of Review

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Martin v. Walker*, 606 S.W.3d 565, 567 (Tex. App.—Waco 2020, pet. denied). In reviewing a trial court's ruling, we consider the pleadings and affidavits of the parties. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006. We review the facts in the light most favorable to the nonmovant. *See Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

**Applicable Law**

Under the TCPA, a defendant may move to dismiss a legal action that is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association. TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a). The TCPA defines "exercise of the right to petition," in pertinent part, as a communication made in or pertaining to a judicial proceeding. *Id*. § 27.001(4)(A)(i). The term "communication" is defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id*. § 27.001(1).

The defendant-movant bears the initial burden of showing that the conduct that forms the basis of the claim against it is protected by the TCPA, that is, that the suit is based on or is in response to the movant's exercise of its right to free speech, association, or petition. *Id*. § 27.005(b); ***Castleman v. Internet Money Ltd.***, 546 S.W.3d 684, 691 (Tex. 2018) (per curiam). If the defendant meets this burden, then the burden shifts to the plaintiff-nonmovant to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); ***Castleman***, 546 S.W.3d at 691. If the nonmovant fails to satisfy its burden to present a prima facie case, the trial court must dismiss the action. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); ***In re Lipsky***, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). However, if the nonmovant satisfies its burden, the movant may still obtain a dismissal if it establishes each essential element of a valid defense to the nonmovant's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d); ***Castleman***, 546 S.W.2d at 691.

Intertwined with and overlying this multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; ***Morrison v. Profanchik***, 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). When invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process. *See Castleman*, 546 S.W.3d at 688; *Morrison*, 578 S.W.3d at 680.

**The TCPA's Applicability**

Winstead asserts that the TCPA applies because the communication USA Lending complains of constitutes the exercise of the right to petition. Specifically, Winstead argues that USA Lending's claim is based on Winstead's filing of an allegedly defective document, the

3

motion for default judgment. We agree that the TCPA applies to claims based on filings a lawyer makes on behalf of a client in underlying litigation. A pleading filed in a lawsuit is a communication. *See Brown Sims, P.C. v. L.W. Matteson, Inc.*, 594 S.W.3d 573, 578 (Tex. App.—San Antonio 2019, no pet.). Further, statements made by a lawyer on behalf of his client are covered by the TCPA. *See Youngkin v. Hines*, 546 S.W.3d 675, 681 (Tex. 2018).

In its petition, USA Lending complained that Winstead dropped from the motion for default judgment any claim for monetary relief. USA Lending now contends that its legal action was based solely on, and in response to, what Winstead failed to do or communicate, and therefore the TCPA does not apply. USA Lending relies heavily on *Ray v. Fikes*, No. 02-19-00232-CV, 2019 WL 6606170 (Tex. App.—Fort Worth December 5, 2019, pet. denied) (mem. op.). In that malpractice suit, the court determined that the TCPA did not apply. The Fort Worth court explained that Fikes alleged that his attorney, Ray, who did not timely file Fikes's suit, wholly failed to act before limitations expired, and that allegation did not implicate a communication at all. *Id*. at \*3. Thus, Fikes complained of the failure to communicate and, further, did not attack statements made in a late-filed petition. Here, in contrast, USA Lending attacks the motion, a communication, not the absence of a motion. The failure to include a specific request in a motion is not the same as failing to file the motion at all.

There can be no doubt that the motion is a communication in a judicial proceeding. The absence of a request for damages in the motion for default judgment communicated to the judge that the court need not consider the question of damages. The basis of the malpractice lawsuit is the alleged defective communication. The fact that the defect involves an omission does not alter the motion's character as a communication in a judicial proceeding. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(1), (4)(A)(i); *Brown Sims, P.C.*, 594 S.W.3d at 579 (held that TCPA applied to client's malpractice claim where defendant's defective communication, the answer filed on behalf of client, did not include a specific affirmative defense). USA Lending argues that *Brown Sims, P.C.* is inapplicable because it relied on the "relates to" language of Section 27.003(a) that has since been deleted from the statute.[2] While it may be that, as USA Lending asserts, the legislature intended to narrow the scope of the TCPA's reach by deleting the "relates to" language, a question we do not address, that does not lead to the conclusion that the TCPA

---

[2] *See* Act of May 18, 2011, 82nd Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 960, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)).

does not apply in this case. USA Lending's malpractice suit is based on and is in response to Winstead's exercise of the right to petition, the motion Winstead filed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

We conclude that the motion for default judgment filed by Winstead on behalf of their client, USA Lending, is a communication made in a judicial proceeding. *See id*. §27.001(4)(A)(i). By filing the motion, Winstead was exercising its right to petition. *See id*. § 27.003(a). Accordingly, the TCPA applies to this lawsuit.

## Commercial Speech Exemption

USA Lending asserts that, if the TCPA applies, the commercial speech exemption also applies to exclude Winstead's communication from the TCPA's protections. The commercial speech exemption provides that the TCPA does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer. *Id*. § 27.010(a)(2).

The party asserting the commercial speech exemption bears the burden of proving its applicability by a preponderance of the evidence. *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). In deciding whether the nonmovant has satisfied that burden, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *Hieber*, 591 S.W.3d at 211. If an action falls under a TCPA exemption, the TCPA does not apply and may not be used to dismiss the action. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). Accordingly, application of an exemption means the nonmovant need not make his prima facie case. *See* *Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. denied).

The supreme court has determined that this exemption applies when the nonmovant proves each of the following elements:

> (1) The defendant was primarily engaged in the business of selling or leasing goods;

5

     (2)  The defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services;

     (3)  The statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides; and

     (4)  The intended audience of the statement or conduct were the actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman*, 546 S.W.3d at 688. We may rely on the factual allegations in USA Lending's petition, alone, to meet the elements. *See **Hawkins v. Fox Corp. Housing, LLC***, 606 S.W.3d 41, 46 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

USA Lending asserted that Winstead is a law firm doing business in Harris County, Texas, Ruiz is a partner in the firm, and they represented USA Lending in litigation against its former employee. This satisfies the allegation that Winstead is primarily engaged in the business of selling legal services. USA Lending further alleged that, in the course of that representation, Winstead filed the complained-of motion. That is, Winstead made the statement in its capacity as a seller of legal services. This satisfies the second *Castleman* element.

We turn now to the third element. The communications the commercial speech exemption applies to are those made as "commercial speech which does no more than propose a commercial transaction." *Castleman*, 546 S.W.3d at 690. A commercial transaction is generally a business deal. *See Commercial Transaction*, BLACK'S LAW DICTIONARY (10th ed. 2014). Commercial speech is expression related solely to the economic interests of the speaker and its audience. *See **Marketshare Telecom, L.L.C. v. Ericsson, Inc.***, 198 S.W.3d 908, 918 (Tex. App.—Dallas 2006, no pet.). "[T]he exemption is not established unless the challenged statement was 'about' the speaker's particular goods or services, or the speaker's business of selling them." ***Toth v. Sears Home Improvement Prods., Inc.***, 557 S.W.3d 142, 154 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

In contrast, the communication at issue here, the motion to enter a default judgment, did not arise out of the sale or solicitation of Winstead's legal services or a commercial transaction. *See **Schimmel v. McGregor***, 438 S.W.3d 847, 857-58 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); ***Pena v. Perel***, 417 S.W.3d 552, 555 (Tex. App.—El Paso 2013, no pet.). We conclude that USA Lending failed to establish the applicability of the commercial speech

6

exemption.[3] *See Castleman*, 546 S.W.3d at 688. Therefore, we turn to a discussion of whether USA Lending proved its prima facie case which it must do to avoid dismissal of its suit.

**Prima Facie Case**

To defeat Winstead's TCPA motion to dismiss, the TCPA requires USA Lending to establish by clear and specific evidence a prima facie case for each essential element of its legal malpractice claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c). "Clear" means unambiguous, sure or free from doubt, and "specific" means explicit or relating to a particular named thing. *In re Lipsky*, 460 S.W.3d at 590. A prima facie case is "the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id*. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *Id*. To meet the "clear and specific evidence" requirement, a plaintiff must provide enough detail to show the factual basis for its claim. *Id*. at 591. The TCPA does not require direct evidence of each essential element of the underlying claim to avoid dismissal. *Id*. However, conjecture, guess, or speculation cannot survive "clear and specific" scrutiny under the TCPA. *See Van der Linden v. Khan*, 535 S.W.3d 179, 195 (Tex. App.—Fort Worth 2017, pet. denied).

To prevail on a legal malpractice claim, the plaintiff must prove the defendant owed the plaintiff a duty of care, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff suffered damages. *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Devel. and Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009). The remedy for legal malpractice is compensatory damages, the goal of which is to put the plaintiff "in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." *Id*. at 122. Specifically, the plaintiff must prove the amount of damages that would have been recoverable and collectable, if the other case had been properly prosecuted. *Id*. at 112. The time at which collectability is determined is as of or after the time a judgment was first signed in the underlying case. *Id*. at 109. To prove collectability, the plaintiff may show the underlying defendant was solvent, or had current income, profits, or access to finances that can be diverted to satisfy a judgment, or the judgment would have been paid from another source such as insurance or a surety. *Id*. at 114.

---

[3] USA Lending has not provided and we have found no cases where the Commercial Speech Exemption has been found to apply in a legal malpractice case.

Accordingly, when the claim is that lawyers improperly represented the plaintiff in another case, causing an adverse result, the plaintiff must produce evidence from which a jury may reasonably infer that the attorney's conduct caused the damages alleged. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004). To prove causation, the client claiming attorneys negligently represented it in another case must show that the client would have achieved a more favorable result in the underlying suit if the client had been represented by non-negligent attorneys. *Rogers v. Zanetti*, 518 S.W.3d 394, 401 (Tex. 2017). Proximate cause has two elements: cause in fact and foreseeability. *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 122. Cause in fact must be established by proof that (1) the negligent act or omission was a substantial factor in bringing about the harm at issue, and (2) absent the negligent act or omission, the harm would not have occurred. *Id*. Causation must be proved, and conjecture, guess, or speculation will not suffice as that proof. *Id*.

Winstead does not argue that it did not owe a duty to act with ordinary care or that it did not breach that duty. Thus, we need only discuss the elements of causation and damages.

*Forum and Decision Maker*

Before we address whether USA Lending met its burden to prove a prima facie case, we must consider Winstead's argument that the forum and the decision-maker are central to the question of whether the alleged malpractice caused harm in the underlying case. Winstead asserts that to succeed on its malpractice claim, USA Lending must show that the specific judge presiding over the Ahmari case, Judge Sam Sparks, would have awarded money damages had a request for them been included in the motion for default judgment. We are unpersuaded by this argument.

To support this argument, Winstead relies heavily on *Rogers v. Zanetti*. There, in the process of analyzing the sufficiency of the client's evidence on the issue of causation, where the complaint was that the attorney should have presented an additional expert, the court explained that a testifying expert referred to statements made by a juror in the underlying case. The court commented that it would not "address whether a juror's testimony about his or her mental processes could ever be competent evidence in a subsequent malpractice case." *Id*. at 407 n.3. The court assumed without deciding that "the secondhand juror testimony is competent evidence," recognized that it informed the expert's opinion, then went on to determine that it did not support an opinion that a reasonable jury would have credited the testimony of a competing

8

expert had it been given the chance. *Id*. at 408. The court held that the affidavit was conclusory and incompetent summary judgment evidence. *Id*.

*Rogers* does not support Winstead's position. The *Rogers* court had to acknowledge that the expert relied on juror testimony, but it in no way suggested that courts hearing legal malpractice claims should consider the particular forum or decision maker involved in the underlying suit in ruling on the malpractice claims.

Winstead also relies on *Brown Sims, P.C.* where the court considered whether the TCPA applied to a malpractice suit brought by a former client against its attorneys. One of the former client's complaints revolved around the attorneys' failure to file a special appearance based on minimum contacts with the jurisdiction. The proffered expert affidavit discussed the importance of using procedural mechanisms to remove the case from the county in which it was filed due to the likelihood that trying the case in a different jurisdiction would result in "a lower settlement value." *Brown Sims, P.C.*, 594 S.W.3d at 581-82. Thus, the discussion of the forum of the underlying case was central to the specific malpractice asserted against the defendant. The *Brown Sims, P.C.* court did not state that the specific forum and specific decision maker are always central to the question of causation.

USA Lending responds that the sufficiency of evidence in a legal malpractice claim is based on what an objective reasonable factfinder would decide. It relies in part on *Alexander*. There, the client brought a legal malpractice suit against the attorney who represented it in bankruptcy court. The client presented expert testimony that referenced the bankruptcy judge, stating "the evidence that was offered and admitted at trial caused Judge Able to make the decision that he made." *Alexander*, 146 S.W.3d at 121. The jury was asked whether, in reasonable probability, a bankruptcy judge would have decided the underlying adversary proceeding differently if the attorney had personally tried the case or if he or co-counsel had introduced other evidence. The jury found in favor of the client, but the trial court granted the attorney's motion for judgment notwithstanding the verdict on the issue of causation. The supreme court's discussion of the bankruptcy judge arose out of the expert's testimony, in light of the wording of the jury charge, in the normal course of reviewing the case. *See id*. at 119. Whether any charge error existed was not an issue in the case. However, both the majority and the concurrence indicated that it would be inappropriate for a judge to testify as to how he might have ruled. The majority noted that the bankruptcy judge was "quite properly not asked to, and

9

did not, testify as to how he might have ruled if the case had been presented differently." *Id*. The concurring justice stated that he doubted whether a jury could be expected to determine, even with expert testimony, what a judge would have decided in hypothetical circumstances. *Id*. at 122. (Hecht, J., concurring). The court applied the standard of review required in that case to determine whether the trial court erred in determining that the jury was competent to determine causation without expert authority. *Id*. at 117-120.

Our review of the caselaw reinforces our determination that Winstead's argument has no basis in law or practicality. The argument implies that judges of different backgrounds or temperaments, or with different judicial philosophies, are free to allow their personal inclinations to influence their decisions. Judges are not at liberty to award damages based on their own arbitrary standards. They all must faithfully apply the law. The supreme court has not indicated that malpractice suits should highlight the particular forum or judge involved with the underlying case. Legal malpractice cases are decided and reviewed using the law applicable to the case depending on the procedure by which it was disposed of in the trial court. *See Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673 (Tex. 2017) (per curiam) (review of summary judgment rendered against client in legal malpractice suit); *Rogers*, 518 S.W.3d at 411-12 (same); *Stallworth v. Ayers*, 510 S.W.3d 187, 194 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (review of Rule 91a dismissal of legal malpractice claim having no basis in law); *Vuong v. Luk*, No. 01-11-00178, 2013 WL 6728992 (Tex. App.—Houston [1st Dist.] December 17, 2013, pet. denied) (per curiam) (mem. op.) (legal and factual sufficiency review of bench trial where court found attorney committed legal malpractice); *Primis Corp. v. Milledge*, No. 14-08-00753-CV, 2010 WL 2103936 (Tex. App.—Houston [14th Dist.] May 27, 2010, no pet.) (mem. op.) (after bench trial in legal malpractice suit, court rendered take-nothing judgment because the attorney's negligence was not the proximate cause of plaintiff's damages; affirmed on appeal because expert testimony was necessary on issue of causation); *Ballesteros v. Jones*, 985 S.W.2d 485, 494 (Tex. App.—San Antonio 1998, pet. denied) (op. on reh'g) (court reviewed sufficiency of the evidence supporting jury findings in legal malpractice suit where jury charge limited its definitions to county where underlying suit was tried); *see also U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 431 (5th Cir. 2014) (explaining that a federal district court's findings on valuation are reviewed for clear error, and "[a] finding is clearly erroneous when there is no evidence to support it, or if the reviewing court, after assessing all of the

10

evidence, is left with the definite and firm conviction that a mistake has been committed"). USA Lending was required to show that an objectively reasonable judge would have awarded damages had a request for them been included in the motion for default judgment. USA Lending was under no obligation to present evidence specifically referencing how Judge Sam Sparks would have ruled.

*Causation-Damages*

Next, Winstead asserts that USA Lending presented no evidence that it would have been awarded damages if the request had been included in the motion for default judgment. It was USA Lending's burden to produce evidence from which a jury may reasonably infer that, but for Winstead's conduct, it would have achieved a more favorable result in the underlying suit, that is, it would have been awarded damages. *See Alexander*, 146 S.W.3d at 118-120. In the TCPA context, we must also apply the "clear and specific evidence" requirement. This means that USA Lending must provide enough detail to show the factual basis for its claim and provide enough evidence to support a rational inference that the allegation of fact is true. *See Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

As asserted in the underlying federal suit, USA Lending hired Michael Ahmari as its chief marketing officer, responsible for the development of the company's retail–wholesale websites, the employee intranet, and the social media for the company. On behalf of USA Lending, Ahmari was to acquire all domain names and toll-free numbers utilizing, or similar to, its business name and slogan. Ahmari set up an office in California, acquired certain domain names, arranged for website development and marketing services, and acquired the rights to a toll-free number. Ahmari then resigned and USA Lending learned that he had registered domain names and phone numbers in his own name or aliases, not in the name of USA Lending. It is the expenses associated with Ahmari's activities and paid for by USA Lending that USA Lending identifies as its damages.

To prove its damages, USA Lending presented affidavits of James N. Isaacs, founder and CEO of USA Lending, affidavits of experts, and numerous documents and records. Isaacs explained that its employee, Ahmari, diverted the ownership and use of USA Lending's registered name, website, and telephone number for his use and benefit. USA Lending alleged that Ahmari's actions caused over a million dollars in damages variously described as lost out of pocket costs, lost profits, lost business opportunities, and loss of use damages. Isaacs provided

documentation showing various expenses USA Lending committed to during its endeavor with Ahmari.

Winstead complains that many of the records submitted by USA Lending to prove its damages are records of a separate entity, USA Lend Cash, LLC. USA Lending invites us to take judicial notice of the relationship between USA Lending and USA Lend Cash, LLC. Because this question goes to the merits of the dispute, we decline to do so. *See SEI Bus. Sys., Inc. v. Bank One Tex., N.A.*, 803 S.W.2d 838, 841 (Tex. App.—Dallas 1991, no writ) (holding that "[a]s a general rule appellate courts take judicial notice of facts outside the record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions which are mandated by law").

We note that the evidence, including bank statements and billing invoices, show definitively that the two companies, and James N. Isaacs, all share the same exact address. For our purposes, especially in light of our ruling on collectability, we need not consider the USA Lend Cash balance sheets and general ledgers. The remainder of the evidence shows that USA Lending was billed for purchase of a domain name, website development and marketing, charges associated with the toll-free number, and payroll and other operating expenses. At least some of these expenses, as well as Ahmari's salary, were paid out of USA Lending's Frost Bank business checking account. At this stage, USA Lending was not required to produce evidence supporting an amount or the constituent parts of its damages. *See In re Lipsky*, 460 S.W.3d at 590-91 (pleadings and evidence showing factual basis for claim is sufficient to meet TCPA burden); *Deuell v. Tex. Right to Life Comm., Inc.*, 508 S.W.3d 679, 689 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Additionally, whether USA Lending's evidence is characterized as lost profits, out of pocket expenses, or otherwise, is insignificant at this stage. USA Lending was only required to adduce evidence supporting a rational inference as to the existence of its damages. *See In re Lipsky*, 460 S.W.3d at 590. We conclude USA Lending's evidence satisfies this requirement.

*Causation-Collectability*

In its malpractice suit, USA Lending must prove both the existence of damages and that it would have been able to collect those damages from Ahmari. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 112. Therefore, collectability is an element of USA Lending's claim which it must establish by clear and specific evidence. *See* TEX. CIV. PRAC. & REM. CODE

ANN. § 27.005(c). Winstead asserts USA Lending presented no competent evidence that, had damages been awarded, it could have collected any amount from Ahmari. According to USA Lending, a judgment against Ahmari would have been collectable from various fund sources, including Ahmari's wife's income, investments, and the significant line of credit issued to her company. To address the issue of collectability, USA Lending presented expert affidavits of Kevin Finck and Anthony Musgrave.

An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed. TEX. R. EVID. 703. Additionally, experts may rely on some assumptions provided by the party hiring them. *See* ***Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch***, 443 S.W.3d 820, 832-33 (Tex. 2014). Courts must rigorously examine the validity of the facts and assumptions on which expert testimony is based. *Id*. at 832; ***Whirlpool Corp. v. Camacho***, 298 S.W.3d 631, 637 (Tex. 2009). If the record contains no evidence supporting an expert's material factual assumptions, or if such assumptions are contrary to conclusively proven facts, opinion testimony founded on those assumptions is not competent evidence. ***Mel Acres Ranch***, 443 S.W.3d at 833; *see also* ***Williams v. Ill.***, 567 U.S. 50, 81, 132 S. Ct. 2221, 2241 (2012) ("[I]f the prosecution cannot muster any independent admissible evidence to prove the foundational facts that are essential to the relevance of the expert's testimony, then the expert's testimony cannot be given any weight by the trier of fact."). "A contrary approach would allow parties with the burden of proof on a particular fact (such as causation) to avoid the obligation to put forth evidence by simply instructing their expert to assume the fact in forming their opinions." ***Mel Acres Ranch***, 443 S.W.3d at 833. Further, facts from which an inference may properly be drawn must be established by direct evidence, not by other inferences. ***Merck & Co., Inc. v. Ernst***, 296 S.W.3d 81, 99 (Tex. App.—Houston [14th Dist.] 2009, pet denied).

Finck, a lawyer with substantial experience in the formation and operation of new businesses, provided "an opinion concerning the collectability of a hypothetical, final and non-appealable judgment for out-of-pocket loss and expense totaling between $1,200,000 and $1,500,000 rendered against Mike Ahmari . . . ." Central to Finck's opinions is a business called All Home Lending, Inc., referred to as AHL. He concluded that it is "reasonably likely that the hypothetical judgment could be collected from available funds from the Ahmaris' community

13

property interest in AHL." We are charged with rigorously examining the validity of the facts and assumptions on which this conclusion is based. *See Mel Acres Ranch*, 443 S.W.3d at 832.

Relying on information given to him by USA Lending, Finck seems to take as true that Ahmari was married to someone named Ana. Although we did not find any evidence in the record that Ahmari was married to a woman named Ana, Winstead does not contest that fact. Based on public records, Finck learned that Ana is AHL's President, CFO, and Secretary. From this, Finck deduced that "it appears that Mrs. Ahmari controls the entity." Also, Finck references a June 24, 2017 email from Ahmari to Isaacs in which Ahmari purportedly solicited an investment in AHL from Isaacs and, Finck asserts, shows that Ahmari has control over AHL. The email is not in our record. However, we note that the federal suit against Ahmari was pending on the date that email was allegedly sent.[4]

Further, Finck presumed Ana's equity in AHL and compensation she receives would be available to satisfy the judgment. He deduced that AHL's net worth was between $500,000 and $1,000,000 and that it could be reached by a creditor of Ahmari's. He inferred that the Ahmaris' income derived from AHL would be substantial. He further opined that the proceeds from Ana's ownership of AHL that were reinvested in outside accounts and investments could also be reached by judgment creditors. Finck admittedly based his conclusions on a series of assumptions. He assumed that Ahmari was married to Ana at the time of the judgment, Ana owns all or substantially all of AHL, Ana purchased AHL with community property, there was no pre-nuptial or post-nuptial agreement affecting ownership of AHL, and there was no transmutation of community property into Ana's separate property, or if there was, it was fraudulent. Finally, Finck assumed that Ahmari operates and controls AHL.

To satisfy its burden on collectability, USA Lending was required to prove by clear and specific evidence the fair market value of Ahmari's net assets that would have been subject to legal process for satisfaction of a judgment for actual damages against him. *See id*. at 114. Even if we accepted Finck's assumption that Ana owned shares of AHL by virtue of her role as an office holder of the corporation, there is no evidence before us as to the number of AHL shares

---

[4] Even if the email supported Finck's assumption that the solicitation to Issacs shows Ahmari's control of AHL, that evidence predates the federal court judgment. Evidence a defendant in the underlying suit could have satisfied a judgment at times prior to the time a judgment is signed generally will not be relevant to or probative of the judgment's collectability, unless it is shown that the defendant's ability to satisfy a judgment was not diminished by the passage of time until judgment was signed. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P*., 299 S.W.3d at 113-14.

Ana held, what percentage of the shares she held, whether those shares were restricted or whether some of the shares she held, if any, were encumbered. These facts are necessary to establish whether any shares of stock held by Ana could be reached by creditors and the net value of her stock ownership. USA Lending has presented no facts to establish the net value of any asset owned by Ahmari or any facts of an alternative basis for Ahmari's solvency. *See Webb v. Stockford*, 331 S.W.3d 169, 177 (Tex. App.—Dallas 2011, pet. denied).

Collectability must be proved, not presumed, and when relying on expert opinion to prove collectability, the expert's material assumptions must be substantiated. *See Mel Acres Ranch*, 443 S.W.3d at 833; *Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 299 S.W.3d at 115. An opinion is conclusory and cannot be considered probative evidence if it lacks a factual basis. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 717 (Tex. 2016). Finck's ultimate conclusion, that USA Lending could have collected a judgment against Ahmari, is not based on demonstrable, reasonable facts. *See Starwood Mgmt., LLC*, 539 S.W.3d at 679. His explanation as to why he reached this opinion is not based on facts at all. Instead, he impermissibly stacked several inferences on each other. *See Ernst*, 296 S.W.3d at 99; *Entex v. Gonzalez*, 94 S.W.3d 1, 8 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (held that "a vital fact may not be established by piling inference upon inference"). There is no evidence proving the fundamental facts that are essential to Finck's ultimate conclusion, only assumptions. *See Williams*, 567 U.S. at 81, 132 S. Ct. at 2241. Finck's critical assumption that Ahmari controls AHL and that he has access to AHL's assets is not competent evidence. [5] *See Mel Acres Ranch*, 443 S.W.3d at 833.

USA Lending also offered the affidavit of Anthony Musgrave who reviewed multiple documents regarding AHL. He stated that the documents establish the existence of quantifiable assets of at least $1,000,000 in the possession of AHL for the applicable time period. Unfortunately, Musgrave's testimony is incompetent to prove collectability as it has no significance apart from the unsubstantiated assumptions in Finck's affidavit. *See Mel Acres Ranch*, 443 S.W.3d at 833.

We conclude that USA Lending failed to produce evidence that a judgment for damages against Ahmari in the underlying suit would have been collectable. *See Akin, Gump, Strauss,*

---

[5] Contrary to the facts in the cases cited by USA Lending, this case involves a default judgment where Ahmari chose not to answer and contest the lawsuit brought against him seeking monetary damages. From this action, one could infer that Ahmari was not concerned that any judgment against him for monetary damages would be collectable.

***Hauer & Feld, L.L.P.***, 299 S.W.3d at 112-13.  As a result, there is no evidence that, but for Winstead's negligence in the underlying suit, USA Lending would have achieved a more favorable result against Ahmari.  *See **id.***; ***Alexander***, 146 S.W.3d at 118-20.  Accordingly, USA Lending did not establish by clear and specific evidence a prima facie case for the causation element of its malpractice suit.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); ***Alexander***, 146 S.W.3d at 118-20.  We sustain Winstead's sole issue.

## DISPOSITION

Because USA Lending did not meet its burden to present a prima facie case, the trial court erred by denying Winstead's motion to dismiss.  Accordingly, we ***reverse*** the trial court's order denying Winstead's motion to dismiss.  We ***remand*** the case to the trial court to enter an order of dismissal and for further proceedings consistent with this opinion.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a).

**GREG NEELEY**
Justice

Opinion delivered March 18, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 18, 2021**

**NO. 12-20-00172-CV**

**WINSTEAD PC  AND JAMES RUIZ,**
Appellants
V.
**USA LENDING GROUP, INC.,**
Appellee

Appeal from the 281st District Court
of Harris County, Texas (Tr.Ct.No. 2020-03028)

THIS CAUSE came to be heard on the oral arguments, appellate record, and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order of the court below be **reversed** and the cause **remanded** to the trial court for further proceedings.

It is FURTHER ORDERED that all costs of this appeal are hereby adjudged against the Appellee, **USA LENDING GROUP, INC.**, for which execution may issue, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*